THE NATIONAL SURETY COMPANY *et al.* v. THE KANSAS CITY HYDRAULIC PRESS BRICK COMPANY.

No. 14,347.     (84 Pac. 1034.)

SYLLABUS BY THE COURT.

1. CITIES—*Paving Contract Held Void—Restricting Competition.* Where a city council enters into a contract for paving the streets of a city with vitrified brick, and the petition, ordinance and contract provide that brick of a particular brand, manufactured and sold by but one person or company, shall be used, and other kinds of vitrified brick equally good for the purpose are made and sold in the vicinity by other companies, the proceedings to pave and the contract are void under the provisions of section 747 of the General Statutes of 1901 requiring such contracts to be let to the lowest bidder, and contrary to public policy, in restricting and preventing free competition.

2. ———— *Petition for Improvements—Description of Material to be Used.* The provision of section 730 of the General Statutes of 1901 requiring that the petition for such improvements shall state a specific description of the material to be used is fully complied with, in cases where vitrified brick is to be used, by the use of the words "vitrified brick," followed by words describing the standard of quality desired.

3. ———— *Contractor's Bond—Action against Surety for Material Furnished—Notice of Illegal Proceedings.* When a contract entered into by a city for paving streets is void for the reason that no opportunity is given therein for free com-

Surety Co. v. Brick Co.

petition in the purchase of the materials used, all the proceedings are void, and persons who-furnish labor or material with full knowledge of the facts which constitute the proceedings illegal are bound thereby and cannot maintain an action against the surety of the contractor who has furnished a bond under the provisions of section 5130 of the General Statutes of 1901.

4. ———— *Answer Not Demurrable.* In an action upon such a bond to recover for material furnished to a contractor and used in paving streets of a city, an answer which sets up the facts which render the contract between the city and the contractor illegal and void as against public policy, and states that any material furnished by plaintiff was with full knowledge of all such facts, states a good defense, and a demurrer thereto should be overruled.

Error from Wyandotte court of common pleas; WILLIAM G. HOLT, judge.   Opinion filed March 10, 1906.  Reversed.

### STATEMENT.

THIS action was begun to recover for brick furnished to W. W. Atkin, a contractor, who paved certain streets of Kansas City, Kan.   The action was brought against W. W. Atkin, as principal, and the National Surety Company, as surety upon his statutory bond.   On the conclusion of the evidence the court directed a verdict in favor of plaintiff and against Atkin and the surety company for $6115.95, and the surety company prosecutes error.

The petition recites that in September, 1901, Atkin entered into a contract with the city for paving certain streets with brick, and, in accordance with the provisions of the statute, a bond was executed, with the surety company as surety, conditioned that the contractor should pay all indebtedness incurred for labor or material furnished in making such improvements; that plaintiff, under a contract with Atkin, furnished the brick sued for; that the same were used in making the improvements, and had not been paid for.   There were three streets improved under separate contracts, and the material furnished for each was made the

basis of a separate cause of action. The petition set out copies of the bonds, which are in conformity with the provisions of section 5130 of the General Statutes of 1901.

The National Surety Company filed an answer which set up a general denial, and in addition two further defenses, to which the court sustained separate demurrers. The sole question to be decided is whether these demurrers were rightfully sustained. The second and third counts of the answer are as follow:

"(2) For another and further answer and defense, this defendant says that at the time of the execution of the contract between W. W. Atkin and the city of Kansas City, Kan., described in plaintiff's petition, it was provided by section 747 of the General Statutes of Kansas, 1901, that before any work of the character provided for in said contract should be commenced sealed proposals therefor should be invited by the city of Kansas City, and said work should be done by contract let to the lowest and best bidder. The purpose of said provisions of the statute was to require competition in all such work.

"The Diamond Brick and Tile Company at all the times mentioned in plaintiff's petition, and for a long time prior thereto, was, and now is, engaged largely in the business of manufacturing and selling vitrified paving brick for use in paving streets of cities and towns. It had the exclusive sale of all said brick manufactured by it, and it alone had the right to, and did, sell said brick to parties engaged in the business of paving with them streets in cities and towns. Said brick had become known as, and were generally called in the city of Kansas City and vicinity, 'vitrified paving brick, Diamond brand.' At all said times mentioned, other kinds and makes of vitrified paving brick were manufactured and sold in the city of Kansas City and vicinity, and were used in paving streets of cities or towns, equal in all respects to the brick manufactured and sold by said Diamond Brick and Tile Company. Said other kinds and makes of brick were fully up to all the tests and standards established by the authorities of the city of Kansas City for paving brick, and were as easily obtainable in the markets of said city as said brick made by said Diamond Brick and Tile Company.

"Some time prior to the execution of the contract described in plaintiff's petition, and prior to the passage of the ordinance authorizing the doing of the work out of which this controversy has arisen, the Diamond Brick and Tile Company circulated and caused to be circulated among the resident owners of the lots and lands fronting upon Fifth street, a street in said city of Kansas City, between Central avenue and Euclid avenue, a petition asking that the proper authorities of the said city cause said street to be paved with vitrified paving brick, Diamond brand, the manufacture of said Diamond Brick and Tile Company, and procured a majority of said resident landowners to sign said petition. Its purpose in circulating and causing said petition to be circulated and signed as aforesaid was to procure the paving of said street with its brick, of which it had the exclusive manufacture and sale, to furnish such brick for such purpose and to prevent competition as to the brick to be used in paving said street as required and provided by the statutes of the state of Kansas, as aforesaid. Thereafter said Diamond Brick and Tile Company, in furtherance of said purpose, requested and procured the authorities of the said city to have enacted ordinance No. 4680 of said city, which provided that said street should be paved with 'No. 1 vitrified paving brick, Diamond brand,' which was duly enacted. Said ordinance No. 4680 was approved on September 11, 1901, and was entitled 'An ordinance providing for the paving of Fifth street from Central avenue to Euclid avenue.' The work or improvement directed by said ordinance was of the character described in the provisions of said statute of the state of Kansas as hereinbefore referred to, and under the said provisions it was the duty of the authorities of said city to have so acted as to have had competition in making said improvement in all respects and every single detail thereof, including the materials out of which said improvement was to be constructed. Said ordinance violated said provisions of said statute by absolutely preventing all and any competition as to the brick out of which said improvement should be constructed, in that it required absolutely that it should be of the manufacture of the Diamond Brick and Tile Company, sold exclusively by it.

"After the enactment of the said ordinance said city entered into a contract with the defendant W. W. At-

kin, who was solicited by said Diamond Brick and Tile Company to bid thereon for making said improvement in pursuance of said illegal ordinance, and in compliance therewith said contract also provided that said pavement should be made of the vitrified paving brick exclusively manufactured and sold by the Diamond Brick and Tile Company. The Diamond Brick and Tile Company circulated said petition and obtained the signatures of property-owners thereto, requested and procured the council to enact said ordinance, and found and induced the contractor to bid on said work and obtain said contract, for the purpose of selling its brick for such work, in such manner that it would be impossible for any other kind of brick to be used, and, without its active efforts to that end, said work would not have been done or said contract made. By reason of the premises said ordinance and said contract are absolutely void in whole and in part, and the bond sued on herein, being founded on said contract, is also absolutely void in whole and in part.

"If the plaintiff sold any of the material described in its petition to the defendant W. W. Atkin, and delivered the same for the work described in the contract mentioned in plaintiff's petition, such sale and delivery were made with full knowledge of the facts hereinbefore set forth.

"Wherefore, having fully answered, defendant prays to be discharged, with its costs.

" (3)   For another and further answer and defense herein, this defendant says that said contract described in plaintiff's petition, between W. W. Atkin and the city of Kansas City, provided that the work described therein should be begun within ten days after written notice so to do should have been given to said W. W. Atkin by the city engineer of the said city of Kansas City, and that said work should be completed within sixty days thereafter. Such notice was given by said city engineer to the said W. W. Atkin on September 15, 1902. But this defendant says that if any of the material described in plaintiff's petition was furnished to the defendant W. W. Atkin for said work, said material, and each and every part thereof, was, without this defendant's knowledge or consent, furnished more than sixty days after said notice was given by said city engineer to said W. W. Atkin, and more than seventy days after said notice had been given, and long after said contract had expired, and that therefore

there is no liability on the part of this defendant on said bond.

"Wherefore, defendant, having fully answered, prays to be discharged, with its costs."

The answer to the three causes of action was the same, and separate demurrers were sustained to the second and third defenses above set forth.

*Frank Hagerman,* and *A. L. Berger,* for plaintiffs in error.

*McFadden & Morris,* for defendant in error.

The opinion of the court was delivered by

PORTER, J.: The conclusions we have reached in this case render it necessary to consider only the question whether the demurrers to the second and third counts of the answer should have been sustained. It is proper to say here that there is a substantial conflict in the averments of the answer and the claims advanced by counsel for plaintiffs in error in their briefs, which makes it somewhat difficult to understand what their position is. It is asserted in the briefs that "the answer pleaded that the plaintiff actively promoted the work, and by its manipulation had the city order and advertise that the work should be done with a certain kind of brick only furnished by the plaintiff." Again they say:

"The allegations contained in the answer of the National Surety Company charge that the improvements were promoted by the plaintiff below, for the purpose of having the city, in ordering it to be done, expressly to direct in the ordinance and the contract thereunder that the improvements should be constructed out of the brick exclusively manufactured and sold by it; that both said ordinances and contracts did so provide; that plaintiff did sell all the brick that were used in the construction of the improvements."

In the reply brief particular attention is again called to the answer, and it is persistently urged that it contains these averments. A careful reading of the answer will disclose, we think, that this claim is incor-

rect. No such statements are found there, in substance or in form. The answer alleges that all the illegal acts complained of were procured to be done by the Diamond Brick and Tile Company, but nothing connecting that company with plaintiff is alleged, save and except the following: "If plaintiff sold any of the material described in its petition to the defendant W. W. Atkin, and delivered the same for the work described in the contract mentioned in plaintiff's petition, such sale and delivery were made with full knowledge of the facts hereinbefore set forth." If the plaintiff had been the Diamond Brick and Tile Company, or if the answer had alleged what the briefs say it did, it is apparent that a different question would be presented.

If it be conceded that the facts set forth in the answer established the illegality of the contract entered into by Atkin for the paving of these streets, then the further question arises, Is plaintiff, who is not alleged to have participated in the fraud or illegality, prevented from recovering for material furnished under a separate contract with Atkin, for the reason that the sale of the material was made "with full knowledge of the facts" which made it illegal? It will require no extended argument, we think, to demonstrate that the facts set forth in the second count of the answer, which are admitted by the demurrer, render the contract entered into for paving these streets illegal and void. Section 747 of the General Statutes of 1901 provides:

"Before the building of any bridge or sidewalk, or any work on any street, or any other kind of work or improvement, shall be commenced by the city council, or under their authority, a detailed estimate of the cost thereof shall be made under oath by the city engineer and submitted to the council; and in all cases where the estimated cost of the contemplated work or improvement amounts to one hundred dollars, sealed proposals for the doing or making thereof shall be invited by advertisement, published by the city clerk in the official newspaper of the city for at least three consecutive days, and the mayor and council shall let the work by con-

tract to the lowest responsible bidder, if there be any such whose bid does not exceed the estimate."

The object and purpose of this provision of the statute is to insure competition in the letting of contracts for public improvements. This is the uniform ruling of courts in reference to similar statutory and charter provisions governing cities. (*Schoenberg v. Field,* 95 Mo. App. 241, 68 S. W. 945; *Smith v. Syracuse Improvement Company,* 161 N. Y. 484, 55 N. E. 1077; *Swift v. City of St. Louis,* 180 Mo. 80, 79 S. W. 172; *Larned v. City of Syracuse,* 17 N. Y. Supr. Ct., App. Div., 19, 44 N. Y. Supp. 857; *Galbreath v. Newton,* 30 Mo. App. 380; *McQuiddy v. Brannock,* 70 Mo. App. 535.)

The answer alleges that several other kinds of vitrified brick were made and sold in Kansas City, equal in all respects to the particular brand named in the contract. The principal item of cost in the material used for this paving was the brick. If but one particular brand or make of brick was to be used, in the very nature of things all opportunity for competition was eliminated, and favoritism, fraud and corruption were made possible, and extremely probable. Indeed, fraud and favoritism were so apparently the purpose of this provision of the contract and ordinance that the court should not hesitate to condemn as illegal and void all the proceedings. It is urged, on the other hand, that section 730 of the General Statutes of 1901 provides that "in case of paving, such petition shall state the width of the paving, and a specific description of the material to be used." This provision must be construed with the other provision, which was obviously intended to insure competition. To give to section 730 the construction urged would defeat the purpose of the other section. We give effect to both by holding that section 730 is complied with by describing in the petition the material used without designating a kind manufactured or furnished by but one person or company. In a petition for paving the use of the words

"vitrified brick" of standard or some designated quality, without the mention of any particular make or brand, would certainly answer all the requirements of this section and still leave opportunity for competition. The tendency of the courts has been to hold all the proceedings void where opportunity for open competition is denied. In the case of *Smith v. Syracuse Improvement Company*, 161 N. Y. 484, 55 N. E. 1077, it was said:

"A petition for the pavement of a street in the city of Syracuse 'with vitrified paving brick, manufactured by the New York Brick and Paving Company, of Syracuse, N. Y.,' and all the proceedings had thereon by the common council, are in violation of the provisions of the city charter requiring the work to be let to the lowest bidder, and are void, when it appears that the company referred to has a complete monopoly upon the disposal of such brick, and that there are other persons or corporations who manufacture and sell vitrified brick for paving purposes, equal in quality to the particular kind specified." (Syllabus.)

The court held that the petition was void because "through it the petitioners prayed the common council to take such action as was condemned by statute, and, therefore, the petition was void *ab initio*." (Page 491.) In the case of *Schoenberg v. Field*, 95 Mo. App. 241, 68 S. W. 945, which is directly in point, the court said:

"The question thus presented is this: Had the board of public works the power under the charter to arbitrarily select a paving material that was manufactured by one company to the exclusion of the same material manufactured by other companies? The case shows that vitrified brick, as manufactured by the Diamond Brick and Tile Company, was not a patented article and was not thus a monopoly by reason of being pattented. On the contrary, several other companies, in and near Kansas City, manufactured such brick for paving which had passed the standard tests for street paving. The general policy in Kansas City is that in letting public work opportunity must be given for competition. The very fact that the work is let on public

notice at public bidding discloses this.  .  .  .  What possible opportunity can there be for competition when there can be but one bidder?   What possible benefit can result to the property-holder for a public letting of the contract when the contractor has already been selected?   The board of public works had the right to designate and select vitrified brick as the paving material, but it had no right to stifle competition and thereby violate the provisions of the city charter by cutting out, in advance, all competitors."   (Pages 247, 248.)

We quote also from the opinion of the court in *Larned v. City of Syracuse,* 17 N. Y. Supr. Ct., App. Div., 19, 44 N. Y. Supp. 857, a case exactly in point:

"If all men were honest there would be need of few laws, but the experience of all cities shows that fraud sometimes enters into municipal contracts, and the object of the statute under consideration is to prevent favoritism, which is one of the most insidious and dangerous kinds of fraud.  .  .  .  If competition in brick can be thus restricted, the same rule can be applied to lime, labor and whatever enters into the cost of constructing a pavement.   Bids might call for brick manufactured by A., lime made by B., broken stone furnished by C., and labor performed by D., all, however, at prices named, and thus favoritism be allowed to permeate the entire contract.  · Argument is hardly needed to show that this is not competition or a letting to the lowest bidder in the sense meant by the statute. The object of the statute is to keep prices down to reasonable rates, and when this is taken into account it is clear that it was the intention of the legislature that bidders should be unhampered by any restriction whatever, except the specifications regulating the amount and quality of the labor and materials; that bidders should be allowed to buy where they can buy cheapest, so that they can bid lower than if compelled to buy of one company, and that competition should extend to one part of the contract as much as another." (Pages 26, 27.)

In the case at bar the answer set up facts with reference to the contract which, if true, rendered it absolutely void because it was against the provisions of

the statute, and in contravention of sound public policy.

Conceding the illegality of the contract between Atkin and the city, there remains the question whether the answer contains averments which sufficiently connect plaintiff with the illegality to prevent it from recovering for the material furnished. Some contracts are so inherently vicious and immoral that no action can be maintained to enforce them; and courts will not permit a recovery upon a collateral contract which is so connected with the former that the illegal or immoral purpose is kept in view. Where goods are sold or premises leased for the express purpose of being used for an immoral and unlawful purpose the agreement is void, and there can be no recovery of the price. (9 Cyc. 573.) A case in point is *Standard Furniture Co. v. Van Alstine,* 22 Wash. 670, 62 Pac. 145, 51 L. R. A. 889, 79 Am. St. Rep. 960, where a vendor sold goods with the knowledge that they were to be used in a house of ill fame, reserving title with the right to take possession, and was denied the right to recover.

The contract to pave in this case was not illegal or immoral upon its face, but the answer pleaded facts which, if true, rendered it contrary to public policy and void. In the case of *De Wit v. Lander,* 72 Wis. 120, 39 N. W. 349, plaintiff sued upon a contract which it appears from the evidence involved a partnership with another to engage in the business of a night scavenger, which the ordinances of the city prohibited a person from exercising without a license. It was held he could not recover.

"It is a general rule that contracts are void which are repugnant to justice, or founded upon an immoral consideration, or which are against the general policy of the common law, or contrary to the provisions of any statute (even where such statute does not expressly declare them void) ; and that a party who is obliged to trace through such a contract his right to a debt alleged to be due him cannot recover." (*Melchoir v. McCarty,* 31 Wis. 252, 11 Am. Rep. 605.)

The rule is stated by Kent as follows: "If the contract grows immediately out of, or is connected with, an illegal or immoral act, a court of justice will not enforce it. But if it be unconnected with the illegal act, and founded on a new consideration, it may be enforced." (2 Kent's Com., 14th ed., *466.) And in the case of *Buck v. Albee*, 26 Vt. 184, 190, 62 Am. Dec. 564, it was said:

"In the application of this rule it may be observed that in all cases where it is necessary to prove the illegal contract and sale to enable the plaintiff to recover, then the contract is so connected with the illegal act that a recovery cannot be had. But if the right can be established without such proof, the plaintiff may recover; for the claim is unconnected with the sale, and rests on a new consideration."

When the party complaining can establish his claim without relying upon the illegal transaction, it is the general holding of the courts that he can recover; but, if it requires the aid of the illegal contract or transaction, he cannot. The cases are collated in volume 9 of the Cyclopedia of Law and Procedure, pages 546 and 556.

The petition of plaintiff in this case is based upon the surety bond. The statute requiring the giving of the bond sued on reads as follows:

"That whenever any public officer shall under the laws of the state enter into contract in any sum exceeding one hundred dollars, with any person or persons, for purpose of making any public improvements, or constructing any public building, or making repairs on the same, such officer shall take from the party contracted with a bond with good and sufficient sureties to the state of Kansas, in a sum not less than the sum total in the contract, conditioned that such contractor or contractors shall pay all indebtedness incurred for labor or material furnished in the construction of said public building or in making said public improvements." (Gen. Stat. 1901, § 5130.)

Plaintiff's petition recites, first, the making of the contract, and refers to the same, with the plans and

specifications on file in the office of the city clerk; next, the execution of the surety bond, the furnishing and use of the material, and non-payment by Atkin. In the opening statement of plaintiff's counsel the contract for paving is referred to as the first step in the proof, and the contract itself, with the plans and specifications, was introduced in evidence as a basis for the execution of the bond sued on. Thus it is apparent that in order to maintain the action plaintiff found it necessary to allege and prove the contract, which from the facts set forth in the answer was illegal and void. As was said in *Thomson v. Thomson,* 7 Ves. Jr. 470, 473, "here you cannot stir a step but through that illegal agreement; and it is impossible for the court to enforce it." (See, also, *Gunter v. Leckey,* 30 Ala. 591.)

It is urged that the statute requiring the giving of a bond was enacted for the express protection of laborers and material-men; and that, therefore, plaintiff is within its protection, and, not being a party to the illegal contract entered into by Atkin and the city, the facts set forth in the answer constitute no defense. It is a well-recognized rule that where the statute, the violation of which makes the contract illegal, is enacted for the protection of one of the parties to the transaction, he can recover notwithstanding he must prove the illegal contract. Thus, where statutes against usury make the contract illegal, the party injured may maintain an action to recover the excess, for the reason that the statute was designed to protect the needy borrower, and to deny him the right of action would defeat the purpose of the law. The penalty is imposed upon but one of the parties, and the law does not consider them *in pari delicto.* (9 Cyc. 553.) The statute requiring competition in the letting of contracts for public improvements is what renders the contract here illegal; and the intention was to protect the taxpayer and the public—not material-men and laborers. The exception noted to the

general rule does not reach so far as counsel contend, nor does it afford protection to plaintiff.

The statute upon which plaintiff relies and which authorizes the execution of the bond contemplates that, first, a valid contract shall be made—a contract let by competitive bids; competition is a condition precedent to the letting of a valid and binding contract. With full knowledge of the facts plaintiff cannot maintain an action upon the bond, because in order to do so it is necessary to prove the contract for the improvement; and when it appears by the facts averred in the answer that the contract was illegal and void, and that plaintiff had full knowledge of those facts, its contract is likewise shown to be tainted, and falls with the other. In *Woolfolk v. Duncan*, 80 Mo. App. 421, 427, it was said:

"It is well settled that no action will lie upon any contract based upon any unlawful consideration, or which is repugnant to law or sound policy or good morals—*ex turpi contractu actio non oritur*. And it is equally well settled that if a contract grows immediately out of or is connected with an illegal or immoral act a court of justice will not enforce it. And if the contract in fact be only connected with the illegal or immoral transaction and growing out of it, though it be in fact a new contract, it is equally tainted. . . . There is no distinction between a contract that is immoral in nature and tendency and therefore void as against public policy and one that is illegal and prohibited by law." (See, also, *Ernst v. Crosby*, 140 N. Y. 364, 35 N. E. 603; *Kansas City v. O'Connor et al.*, 82 Mo. App. 655; *Town of Kirkwood v. Meramec Highlands Co.*, 94 Mo. App. 637, 68 S. W. 761.)

Sound policy, we think, requires us to hold that a contract of the character of the one in question, which is void for the reason that it opens the door to fraud and favoritism and to the defrauding of taxpayers and the public, shall not be used as the basis of recovery in an action by a party who acquired his rights with full knowledge of the facts which rendered the contract and the proceedings void. The facts averred

14—73 KAN.

in the second count of the answer therefore constituted a defense to the action, and the demurrer should have been overruled.

The third count of the answer states no defense, and the demurrer was rightfully sustained. (*Risse v. Planing-mill Co.*, 55 Kan. 518, 40 Pac. 904.)

We find nothing substantial in the other errors assigned, but the case is reversed and remanded, with instructions to overrule the demurrer to the second count of the answer.

All the Justices concurring.