## WHITLEY *et al. v.* BRYANT.

No. 14900.   SEPTEMBER 6, 1944.   REHEARING DENIED OCTOBER 7, 1944.

*J. C. Murphy,* for plaintiffs in error.
*J. D. Gardner, W. L. Bryan,* contra.

JENKINS, Presiding Justice.   This case comes to us on certiorari from the Court of Appeals.   It was a suit on a contractor's bond, by one furnishing material and labor, given in compliance with the Code, § 23-1705, to the State Highway Department for the faithful performance of a contract for certain public works.   A

suit was originally brought within less than twelve months from the date of the completion of the contract and the acceptance of the work by the public authorities. That suit, however, was dismissed, and the action now before us was brought more than twelve months after the completion and acceptance of said work, but within six months after the dismissal of the prior suit; and it is thus sought to comply with the time requirement as to its institution by invoking the provisions of the Code, § 3-808, relating to the renewal of actions which would otherwise be barred under the statute of limitations. The question presented is whether section 23-1709, which provides that "No action can be instituted on said bond after one year from the completion of the said contract and the acceptance of said public building or public work by the proper public authorities," should be treated as a condition annexed to a right of action created by the statute, or whether it constitutes merely a statute of limitations. If the former interpretation be correct, then under the authority of *Parmelee* v. *Savannah F. & W. Ry.*, 78 *Ga.* 239 (2 S. E. 686), and *Chamlee Lumber Co.* v. *Crichton*, 136 *Ga.* 391 (71 S. E. 673), the action would be too late, while if the latter interpretation be correct the renewal statute as embodied in section 3-808 would be given application and the suit would be maintainable. It cannot be said that the case is one of easy decision. We have read and considered the majority and dissenting opinions of the Court of Appeals, both of which are well considered and strongly presented. We have also had the benefit of painstaking briefs from able counsel, presenting each side of the question. After a full consideration of all of this valuable aid, and after additional research of our own, the question still remains one of considerable difficulty. The syllabus in the majority opinion of the Court of Appeals seems to base its ruling, that the Code, § 23-1709, provides merely a limitation and does not constitute an inherent condition to a new cause of action in favor of materialmen, largely on the fact that the time limit for suit applies to the obligee in the bond as well as to the materialmen; and in the opinion, while it is stated that this reason might not be altogether controlling as to the legislative intent, it is nevertheless stated that, in the absence of any language to the contrary, it will not be presumed that the legislature intended the words fixing the time limit to have double meaning, that is to set one limit

for the bringing of the action for the obligee and a different time limit for the materialman, "to whom a right of action is given for the first time." The majority opinion also stresses the fact that the time limit was not provided for in the paragraph of the act which created a "new cause of action" in favor of the material-man, but was placed in a separately numbered paragraph applying to both the obligee and the materialmen alike. The dissenting opinion expresses the view that section 23-1709 is not a mere limitation statute, but constitutes a condition to the creation and exercise of the new right of action created by the statute; and in support of that view it is urged that "whatever right the plaintiff had to bring and maintain the present action, was given to him by the act of the legislature now under consideration and he is shut into the terms and limitations of that act." Both the majority and dissenting opinions thus appear in agreement on the proposition that the cause of action in favor of the materialman is a new one, created by the same statute which imposes a time limit for suits, and both apparently agree to the statement as laid down in 34 Am. Jur. 16, § 7, that the general rule is, that "a statute which in itself creates a new liability, gives an action to enforce it unknown to the common law, and fixes a time within which that action may be commenced, is not a statute of limitations. It is a statute of creation, and the commencement of the action within the time it fixes is an indispensable condition of the liability and of the action which it permits." The majority opinion, while agreeing that the cause of action in favor of the materialman is created by the statute, and while quoting from American Jurisprudence the rule just stated, undertakes to take the case from without the operation of that rule for the reasons which have been outlined; whereas the dissenting opinion gives full application to the general rule as quoted. We think it is true that the rule quoted from American Jurisprudence should not, as is recognized by the majority opinion, be taken as absolutely controlling, but is more in the nature of a powerful indicium or earmark. We know of no reason why a statute might not create a new cause of action and yet by its plain and unambiguous language provide a statute of limitations rather than a condition to its exercise. See annotations in 67 A. L. R. 1070, 1074; 111 A. L. R. 1065. Therefore, in order to determine the real meaning of the legislature, here, as in all other interpre-

tations of statutes, the language must be taken and construed for the purpose of arriving at the true intent and purpose of the legislative body. This being true, the fact that the time limitation applying to all beneficiaries under the bond is embodied, not as a *proviso* to the cause of action as was the case in *Parmelee* v. *Savannah F. & W. Ry.*, supra, and not as a condition which would *make good* the cause of action as was the case in *Chamlee Lumber Co.* v. *Crichton,* supra, but as a separate and independent paragraph in the original act and as a separate and independent Code section as codified, and the fact that the time limit relates both to the obligee in the bond and to any materialman, throw strong, but not altogether controlling, light upon what the actual intention of the law-making body was. If the rule stated by American Jurisprudence and quoted in the majority opinion be absolute, and if the premise stated in the dissenting opinion to the effect that the only cause of action which the materialman had was given to him under and by virtue of the statute, then that would be an end to the matter, and the conclusion arrived at by the dissenting judge would necessarily follow. But even if the rule stated by American Jurisprudence be taken as *not* absolutely controlling, but only as an indicium or earmark, it affords, nevertheless, where applicable, powerful evidence of the legislative intent, and thus, if applicable, the two lines of reasoning by the Court of Appeals leave a question of considerable importance to the public in much doubt.

This brings us to a consideration of another and different phase of the question. Does the act in fact create the liability in favor of the materialman and against the surety on the bond? Both the majority and minority opinions seem to assume that it does. If it does not, if the right of action exists, not under the statute, but in accordance with the statute on the bond, the main difficulty in arriving at a conclusion would be entirely eliminated, since the rule quoted from American Jurisprudence would not apply. It is true enough that the bond was given *in accordance* with the requirements of the statute, and that the liability *on the bond* results from the requirements of the statute, but the statute in itself does not and could not create a cause of action against this particular defendant or in favor of a particular plaintiff. The cause of action would seem to rest, not under the statute, but on the bond, and the defendant became the surety on the bond not by virtue of

the statute, but by his own voluntary agreement. He contracted with the Highway Department for the benefit of any materialmen who might come within the terms of its protection. It might be said that the bond is a statutory bond, and so it is; but the statute does not create an involuntary liability against any person or class of persons whose liability is made and exists solely by virtue of a statute, such, for example, as statutes giving a right of recovery of damages against cities and counties for injuries caused by mobs. See Hill v. Board of Supervisors, 119 N. Y. 344 (23 N. E. 921). On the contrary, what the statute provides is the giving of a bond, and it is only when the surety, under his voluntary contract, assumes the liability in accordance with the terms of the statute but on the bond that a cause of action arises against him, not under the statute, but under his contractual obligation which he has thus assumed in accordance with the provisions of the statute. Under common law everyone was entitled to enforce his rights under agreements. This particular view has been dealt with in a case on all fours with this case, by the United States Circuit Court of Appeals for the eighth circuit, in Kansas City Hydraulic P. B. Co. v. National Surety Co., 167 Fed. 496 (6) (certiorari denied, 218 U. S. 682, 31 Sup. Ct. 229, 54 L. ed. 1208), in which the court held: "The statute of Kansas requiring contractors for public improvements to execute and file a bond to secure the payment of claims of mechanics and materialmen contains a provision 'that no action shall be brought on said bond after six months from the completion of said public improvements or public buildings.' The plaintiff brought an action within the six months' limitation in the courts of Kansas, and recovered a judgment in the trial court which was reversed on appeal, and a new trial granted. National Surety Company v. Kansas City &c. Brick Company, 73 Kan. 196 (84 Pac. 1034). Upon the remittitur coming down, the plaintiff dismissed its action without prejudice on September 24, 1906, and commenced the present action September 26th the same year. Section 4451, Gen. St. Kan. 1901, reads as follows: 'If any action be commenced within due time, and a judgment thereon for the plaintiff be reversed, or if the plaintiff fail in such action otherwise than upon the merits, and the time limited for the same shall have expired, the plaintiff, or if he die and the cause of action survive, his representatives, may commence a new action within one year

after the reversal or failure.' The present action was commenced within less than one year after the dismissal of the former action, but more than six months after the completion of the improvement. So, unless it is protected by the statute last quoted, it is barred by the six months' limitation fixed by the original statute. In support of its defense, based on the statute of limitations, defendant first urges that the right of action is given by statute, and the limitation is, therefore, a part of the right, so that plaintiff had no cause of action after the expiration of the six months' period; citing Rodman v. Mo. Pac. Ry. Co., 65 Kan. 645 (70 Pac. 642, 59 L. R. A. 704), and The Harrisburg, 119 U. S. 199 (7 Sup. Ct. 140, 30 L. ed. 358). In our judgment, plaintiff's cause of action is not given by statute. The rule invoked is applied to rights unknown to the common law, and created solely by statute, such as the right of recovery for death by wrongful act (The Harrisburg, 119 U. S. 199, 7 Sup. Ct. 140, 30 L. ed. 358; Boston & Maine R. R. v. Hurd, 108 Fed. 116, 47 C. C. A. 615, 56 L. R. A. 193; Theroux v. Northern P. R. Co., 64 Fed. 84, 12 C. C. A. 52); the right to recover damages against cities and counties for injuries caused by mobs (Hill v. Board of Supervisors, 119 N. Y. 344, 23 N. E. 921). In the present case, while the statute required the contractor to furnish a bond, the right of action is not created by the statute. It imposed no liability upon the defendant. On the contrary, defendant's liability arises solely out of contracts into which it voluntarily entered for a valuable consideration. In the case of statutes creating stockholders' liability, the cause of action rests much more closely upon the statute than in the present case, and yet it is held that the limitation in such statutes is not a part of the right. The liability, 'though statutory in its origin, is contractual in its nature.' Ramsden v. Knowles, 151 Fed. 721, 724 (81 C. C. A. 105, 108, 10 L. R. A. (N. S.) 897). The limitation in the present case, therefore, is no part of the right, but relates exclusively to the remedy." The case just quoted from is the only one which is cited or which we have been able to find, whose facts are substantially the same as this case, and which bears directly upon our problem. However, the principle we are now discussing appears to have been similarly determined in Fidelity & Deposit Company of Maryland v. Lindholm, 66 Fed. 2d, 56 (1) (89 A. L. R. 279), in which the Ninth Circuit Court of Appeals held:

"'The liability of a surety on an administrator's bond the giving of which is required by a statute prescribing the terms and conditions thereof is not a 'liability created by statute' within the meaning of a provision of the statute of limitations fixing the period within which action must be brought to enforce such a liability." Texas Portland Cement Co. v. McCord, 233 U. S. 157 (34 Sup. Ct. 550, 55 L. ed. 893), which is strongly relied upon by the plaintiff in error, does not appear to bear upon the proposition here in question. It is true that the statute involved in that case, contrary to the statute here involved, specifically declared that it *created* a new cause of action, and the court refers to the cause of action as having been created by the statute. That case did not, however, involve any renewal-action statute, like the instant case, and consequently the question, as to whether the time limits set by the statute constituted a condition to a new cause of action or a mere statute of limitations, would not seem to have been in any wise involved. The question actually before the court was whether a suit prematurely brought could be saved by amendment during the time in which it might have been brought, or whether an amendment after the expiration of the time limit would avail, even though the latter should be treated either as an intervention in a pending suit or as an original suit. The one question actually involved was whether a premature action could be saved by an amendment made during the time when the action might have been brought, or whether a new action after the expiration of the time limit would avail; consequently it does not appear that the question whether the time limit constituted a condition to a new cause of action or a mere limitation was before the court.

In addition to what has already been said with respect to whether or not the statute created a new cause of action, it would seem that, in this case, it did not do so for still another reason. We cannot think, to requote a portion of the rule as stated by American Jurisprudence, that this was "a statute which *in itself* (italics ours) creates a new liability" for the additional reason that even if the statute, instead of the bond, should be treated as creating the liability, even then, the identical liability already existed in favor of materialmen under the statute embodied in Ga. L. 1910, p. 86. The act of 1916 (Ga. L. 1916, p. 94), now embodied in the Code, §§. 23-1705 to 23-1709, inclusive, in accordance with which the bond

was given in this case, merely consolidated the laws requiring the giving of bonds for public works, and providing for indemnity in favor of materialmen. The act of 1916 by its terms repeals the act of 1910, requiring indemnity bonds for material and labor used in public works, but states that the act then passed was enacted *in lieu* thereof. Thus, even treating the liability as statutory, it could hardly be said that the cause of action in favor of the materialman *was a new right,* when all that the statute did was to rub out an old law and substitute "in lieu thereof" a new law, which, though identical in effect, merely combined all the rules and regulations governing the giving of bonds for public works. Whether the limitation in the old statute was to be taken as a condition or a limitation, the legislature, in re-enacting the law for the protection of materialmen in public works, had the right to make it a limitation irrespective of what it might have been, and since the rights given to materialmen, even though statutory, were not new rights, but were old rights re-enacted by a new law, what has been called the earmark in determining between conditions and limitations would not apply in the latter instance, irrespective of what might have been the rule in the first instance.

We think that the conclusion arrived at by the Court of Appeals is correct.

*Judgment affirmed. All the Justices concur, except Bell, C. J., and Wyatt, J., who dissent.*

### ON MOTION FOR REHEARING.

Counsel submit on their motion for rehearing an impressive line of argument, with authorities in support thereof which they state they had failed to discuss in their original brief. The argument now urged, as we understand it, is that, since under the minority American rule, to which this State is committed, a third person is not ordinarily permitted to enforce a promise made for his benefit, it follows that it is only because the statute here involved expressly authorized the materialman to sue on the bond that he has such right, and consequently the cause of action is under the statute and not on the bond. Thus, in what we have to say, it will be borne in mind that there are three questions involved: the major and controlling question as to whether the action is barred; the ancillary question throwing light on the controlling question, to wit, whether the cause of action lies under the statute or on the

bond; and finally, as throwing light on the question last mentioned, the question raised on the motion for rehearing as to whether, except for the express statutory authority, the plaintiff could sue on the bond in his own name. Most of what is now said in response to the motion for rehearing will bear upon the third and last of the questions named.

While it is true that the Code, § 3-108, provides that, "As a general rule, the action on a contract, whether express or implied, or whether by parol or under seal, or of record, shall be brought in the name of the party in whom the legal interest in such contract is vested, and against the party who made it in person or by agent," it is also true that nearly all of the numerous decisions recognizing this statutory provision, including the leading case of *Sheppard* v. *Bridges,* 137 *Ga.* 615 (74 S. E. 245), give effect to the exception to the rule, and have adopted it as a rule of procedure that a suit may be maintained in the name of a third party where the promise has been made for the express purpose of conferring a benefit upon him. See *Carruth* v. *Ætna Life Insurance Co.,* 157 *Ga.* 608 (122 S. E. 226). In the case just cited, it was held in headnote 1, quoting from *Sheppard* v. *Bridges,* supra, that, where a "promise is made for the purpose of conferring a benefit on a person, though he be not a party to the contract, or furnish the consideration for the promise, he can bring suit upon it;" and in the same case, in headnote 1(a), it was said: "A contract for the benefit of a third person, which evidences an intent to benefit such third person and an obligation on the part of the promisee to the third person, creates an equitable right or interest in the beneficiary, growing out of the trust relationship, which may be enforced by the real beneficiary or her personal representative;" and, in headnote 1(b), it was held that, "A person not a party to the contract and not a privy to the consideration may, if the contract was entered into for his benefit, maintain an action on it if he has either a legal or equitable interest in the performance of the contract." This rule was reiterated though not adjudicated in *Stonecypher* v. *Coleman,* 161 *Ga.* 403, 413 (131 S. E. 75). It appears to be the rule, as recognized by the decisions of this court, that while the provisions of the Code, § 3-108, requiring that a suit be brought "in the name of the party in whom the legal interest in such contract is vested," bars an action by a third person who has

merely an incidental benefit in its performance, it does not preclude an action in the name of a third person who has a direct legal or equitable interest in the performance of the contract, and for whose benefit it was expressly undertaken. In *Reid* v. *Whisenant,* 161 *Ga.* 503, 511 (131 S. E. 904, 44 A. L. R. 599), even the two dissenting Justices, who sought a stricter compliance with the Code section quoted, used this language: "By the weight of authority the action cannot be maintained merely because the third person will be *incidentally* benefited by the performance of the contract; but he must be a party to the consideration, *or the contract must, have been entered into for his benefit, and he must have some legal or equitable interest in its performance."* (Italics ours.) Thus it was held by this court in *American Surety Co.* v. *Small Quarries Co.,* 157 *Ga.* 33 (120 S. E. 617), cited by the movant, that a materialman could not sue on the bond in that case. The bond there involved was executed to the county and did not, as here, contain the additional words or their equivalent, "for the use of the obligee and of all persons doing work or furnishing skill, tools, machinery, or materials under or for the purpose of such contract." But in *Southern Surety Co.* v. *Dawes,* 161 *Ga.* 207 (130 S. E. 577), this court held that, even though the bond did not contain the exact words just quoted from the statute, nevertheless, the materialman could sue thereon, for the reason that the obligation of the bond, while omitting the words "for the use of," was also expressly conditioned for the benefit of materialmen as well as the city. In *Southern Surety Co.* v. *Dawes,* supra, the *Small Quarries Company* case was distinguished. It is true that in these two cases, in determining whether there was a proper plaintiff, the court discussed whether or not the bond sued on was a statutory bond. In the first case, the court decided no; in the second case, yes; and accordingly it was held that the first case lacked a proper party plaintiff, and that the last case did not. But no question was before the court as to whether in either case, if the bond had in fact been executed according to the terms of the statute, that is, "for the use of materialmen," etc., a materialman could have brought suit on the bond in his own name irrespective of whether or not the statute had so expressly authorized. It just so happens that the statutory requirement for this bond, to wit, that it should in effect be written expressly for the use of materialmen, is precisely the

same provision which we have seen would authorize a materialman to sue thereunder without reference to and independently of any such special statutory authorization. Accordingly, the bond in the first case not coming up to the provisions of the statute, which, as stated, amounts to just what would be necessary to sue without special statutory authority, the suit was declared invalid for lack of a proper plaintiff. In the second case, the bond having in fact come up to the provisions of the statute, amounting to the same requirement which would authorize a suit without special statutory authority, the suit was declared valid. In neither case, as has been stated, was any question before the court as to whether or not a bond such as was specified by the statute could have been sued on by a materialman, even though no special authorization so to do had been given by the statute providing for the bond. The provisions required by the statute being those which would have authorized the materialman to sue without special authorization, no necessity appeared for any such decision; and in point of fact the question from the Court of Appeals in the first case made inquiry as to whether the suit could be maintained by the materialman "by virtue of the provisions" contained in the statute, and in the second case the question propounded by the Court of Appeals to this court showed that the bond purported to have been given under the statute, and the suit purported to have been entered in accordance with the particular provisions therein specified. It so happens, however, that the larger ancillary question, not the ultimate question as to whether the action is barred, but the question as to wherein the cause of action lay, was in fact plainly and expressly adjudicated in *Southern Surety Co.* v. *Dawes,* supra, where the court (page 212) used this clear and emphatic language: "*The cause of action, if any, arises from the contract embodied in the bond,* not from the primary or secondary character of the paper that might be set out in a petition suing on the bond." (Italics ours.) In making this statement in *Southern Surety Co.* v. *Dawes,* the court was considering whether under the terms of the statute the suit should be based on the bond or on a certified copy thereof furnished by the clerk. While there was a contention in that case as to whether the bond was a statutory bond by virtue of its terms, and as to whether the plaintiff had complied with the statute in bringing a suit thereon, there seems to have been no contention

as to whether, if in fact the bond complied with the statute, a suit could be maintained by the materialman irrespective of whether the statute expressly so authorized.   However, in ruling that the cause of action was not on the certified copy furnished by the clerk of the city authorities, the court ruled squarely that the *cause of action lay in the contract embodied in the bond*.

*Rehearing denied.*