No. 57,138

SUTTER BROTHERS CONSTRUCTION CO., INC., *Appellant*, v. CITY OF LEAVENWORTH, KANSAS, *Appellee*.

(708 P.2d 190)

Opinion filed October 25, 1985.

*Robert J. Bednar*, of Duncan, Senecal and Bednar, Chartered, of Atchison, argued the cause and was on the brief for appellant.

*Robert D. Beall*, of Leavenworth, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

MCFARLAND, J.: Plaintiff Sutter Brothers Construction Co., Inc., brings this action against the defendant City of Leavenworth seeking damages arising from the municipality's failure to award plaintiff a highway construction contract. The district court entered summary judgment in favor of the defendant on the basis of governmental tort immunity and plaintiff appeals therefrom.

The pertinent facts are as follows: In 1982 the City solicited bids for construction of a highway project known as the Northeast Leavenworth Infrastructure. Prospective bidders were advised that compliance with the City's equal opportunity and affirmative action program as set forth in Leavenworth, Kansas,

Resolution B 321 (June 8, 1976) was a condition of bidding. As provided for in the resolution, a set of forms to be filled out or answered by prospective bidders was submitted to plaintiff. Accompanying plaintiff's submitted bid was its narrative statement titled "Equal Employment Opportunity Policy and Affirmative Action Plan." The statement so submitted was not in the question and answer format contemplated by the official forms (and Resolution B 321) and did not contain all the information required. Resolution B 321 authorizes modification of a submitted affirmative action program by bidders prior to awarding of contracts to make the bidder's program conform to the requirements of the Resolution.

The bids on the highway project were opened on August 31, 1982. On September 10, 1982, a letter was sent to plaintiff by defendant's city manager advising plaintiff that its bid of $263,905.50 made it the apparent low bidder on the project, but that plaintiff's affirmative action plan (submitted with its bid) was deficient in numerous listed areas. Further, the city manager advised that, by virtue of said deficiencies, he would recommend at the September 14, 1982, city commission meeting that the contract be awarded to the second lowest bidder (Julius Kaaz Construction with a bid of $283,170.65). Plaintiff appeared by counsel at the September 14 meeting. At that time the contract was awarded to the second lowest bidder.

On November 18, 1982, plaintiff filed this action seeking damages for the City's failure to award the contract to plaintiff as the lowest responsible bidder, contrary to K.S.A. 13-1017. The district court entered summary judgment in favor of defendant on the basis of governmental immunity under the Kansas Tort Claims Act (K.S.A. 75-6101 *et seq.*). Plaintiff appeals therefrom.

Numerous issues are raised by the plaintiff relative to the propriety of what transpired in the district court, including the timeliness of the City's raising of the immunity defense and the propriety of the legal basis for the immunity determination. There is a fundamental issue inherent in this appeal which must be determined first.

As will be recalled, this is an action at law by an unsuccessful bidder on a municipal public works project seeking damages for the municipality's failure to award the contract to plaintiff as the alleged lowest responsible bidder, contrary to K.S.A. 13-1017.

Said statute provides in pertinent part:

"Before undertaking the construction or reconstruction of any sidewalk, curb, gutter, bridge, pavement, sewer or any other public improvement of any street, highway, public grounds or public building or facility, or any other kind of public improvement in any *city of the first class* is commenced or ordered by the governing body, or under its authority, a detailed estimate of the cost of the improvements shall be made under oath by the city engineer (or some other competent person, appointed for such purposes by the governing body). Such estimate shall be submitted to the governing body for its action thereon. In all cases where the estimated cost of the contemplated building, facility or other improvement amounts to more than $2,000, sealed proposals for the improvement shall be invited by advertisement, published by the city clerk once in the official city paper. *The governing body shall let all such work by contract to the lowest responsible bidder*, if there is any whose bid does not exceed the estimate.

"If no responsible person proposes to enter into the contract at a price not exceeding the estimated cost, all bids shall be rejected and the same proceedings as before repeated, until some responsible person by sealed proposal offers to contract for the work at a price not exceeding the estimated cost." (Emphasis supplied.)

It is the City's position that the material submitted by the plaintiff relative to its equal employment and affirmative action program was so unresponsive to the requirements of Resolution B 321 as to be the equivalent of the submission of no program at all. Therefore, the City reasons plaintiff was not the lowest *responsible* bidder and was not entitled to make modifications in its program as permitted by Resolution B 321. Plaintiff contends it should have been permitted to make any necessary modifications and that it was, in fact, the lowest responsible bidder. The contract in question had been awarded to the second lowest bidder, and the contract executed, before this action was commenced. In this action plaintiff does not seek to enjoin the award or issuance of the contract, to require new bids be submitted, or to be awarded the contract. Rather, plaintiff seeks only damages sustained by it as the result of not receiving the contract. There is no allegation of fraud or other independent tort in this action—the action is predicated solely on alleged violation of K.S.A. 13-1017.

This brings us to the fundamental question. Does an apparent low bidder, who is not awarded a public works project, have a cause of action at law for damages predicated solely upon alleged violation of K.S.A. 13-1017, or is the remedy limited to an equitable action to enjoin the public body from awarding or entering into a contract with another? This issue was specifically

raised and briefed in the district court by defendant City. The district court dismissed the issue with the comment:

"Perhaps . . . an injunction action might have been a preferable route of litigation, but that is not the way the case now presents itself."

This question is not expressly made an appellate issue, but it is so inherently fundamental to the case that it must be addressed.

We must first determine the purpose of K.S.A. 13-1017. Is it to protect the public or the bidders on public works projects? Does it create a cause of action at law for damages for unsuccessful bidders? If not, what relief, if any, is available to unsuccessful bidders?

In *Surety Co. v. Brick Co.*, 73 Kan. 196, 84 Pac. 1034 (1906), a statute similar to K.S.A. 13-1017 was before the court for consideration. The statute was Section 747 of the General Statutes of 1901, which provided:

"Before the building of any bridge or sidewalk, or any work on any street, or any other kind of work or improvement, shall be commenced by the city council, or under their authority, a detailed estimate of the cost thereof shall be made under oath by the city engineer and submitted to the council; and in all cases where the estimated cost of the contemplated work or improvement amounts to one hundred dollars, sealed proposals for the doing or making thereof shall be invited by advertisement, published by the city clerk in the official newspaper of the city for at least three consecutive days, and the *mayor and council shall let the work by contract to the lowest responsible bidder,* if there be any such whose bid does not exceed the estimate." (Emphasis supplied.)

The court held:

"The object and purpose of this provision of the statute is to insure competition in the letting of contracts for public improvements. This is the uniform ruling of courts in reference to similar statutory and charter provisions governing cities. [Citations omitted.]" 73 Kan. at 203.

Further,

"[T]he intention [of the statute] was to protect the taxpayer and the public—not material-men and laborers." 73 Kan. at 208.

64 Am. Jur. 2d, Public Works and Contracts § 86, pp. 947-48, states:

"It is the acceptance, and not the tender, of a bid for public work which constitutes the contract, and it follows, therefore, that the mere submission of the lowest bid in answer to an advertisement for bids for public work cannot be the foundation of an action for damages based upon the refusal or failure of public authorities to accept such bid, and this is true although a statute requires the contract to be let to the lowest bidder, where the advertisement reserves the right

to reject any and all bids. So, when a public official in good faith refuses to award a contract, the bidder has no right of action against him for damages, although his bid is the lowest, and it has been held that no right of action exists even though the public authorities acted maliciously.

"*A bidder for public work cannot base a right of action for damages against the public body, upon a statutory requirement that contracts for the performance of public work shall be let to the lowest bidder, and cannot recover lost profits in case the contract is, contrary to the statute, awarded to a higher bidder. Such a statutory provision, enacted as a protection to the public, cannot be used to make disobedience of its provisions by public officers a double source of punishment to the public body; if the low bidder is permitted to maintain such an action then this obedience of the statute would make the public body pay the difference between the lowest bid and the bid for which the contract was made, and also the profit that the lowest responsible bidder would have made if the statute had not been violated.*

"Many cases, however, take the position that if a binding agreement came into existence when the award was made, the public body cannot revoke the award. Accordingly, there are numerous instances in which a bidder's right to recover damages for the breach of contract inherent in the public body's attempted revocation of the prior award is upheld. Thus, the right of a bidder to sue for damages for the rejection of his bid is to be distinguished from his right to maintain an action for damages for the failure or refusal of public authorities, after the acceptance of his bid, to execute the contract to carry out its terms. But where a statute requires the execution of a formal contract, a successful bidder has no right of action for breach of contract until the contract has been executed." (Emphasis supplied.)

## 64 Am. Jur. 2d, Public Works and Contracts § 87, pp. 948-49, states:

"Public authorities are generally vested with a wide discretion in determining who is the lowest responsible bidder, and indeed, usually are vested with power to reject all bids and ask for new ones, and while doubtless the *courts will interfere* with an arbitrary or dishonest exercise of that discretion by *preventing the award* of a contract to one who upon the basis of his bid is not legally entitled thereto, as a general rule a bidder, though his bid may be the lowest submitted, and he may be a reliable and responsible contractor, cannot by judicial action compel the public authorities to award the contract to him or otherwise found an action in his own right upon the denial of the contract to him.

"The principle that where a duty is imposed for the benefit of one person or class of persons, and another's advantage from its discharge is merely incidental, and not a part of the design of the statute, no such right is created in favor of the latter as forms the subject of an action at law or of a suit in equity, is fatal to the right of the lowest bidder to any relief, either in law or equity, for failure of the authorities to award him the contract, or to prevent the contract's being awarded to another. It goes not to defeat any particular cause of action, but to defeat the right to any relief. However, there are some cases—mainly cases in which the law requires, without qualification, that contracts for such work be let to the lowest

bidder—affirming the right of the lowest bidder for public work to seek the aid of the court to compel protection under his bid.

"The Federal Regulations provide for protests against awards." (Emphasis supplied.)

We turn now to case law from other jurisdictions.

In *Swinerton & Walberg Co. v. City of Inglewood-L.A. County Civic Center Authority*, 40 Cal. App. 3d 98, 114 Cal. Rptr. 834 (1974), it was held that statutory requirements that public contracts be awarded to the lowest qualified bidder are imposed solely for the benefit and protection of the public rather than for the benefit of the bidder so that award by a public entity of a public works contract to one other than the lowest responsible bidder does not give to the latter a cause of action in tort for monetary damages against the public entity.

In *Gulf Oil Corp. v. Clark County*, 94 Nev. 116, 575 P.2d 1332 (1978), the Nevada Supreme Court had before it an action by an unsuccessful public works bidder seeking damages for failure to be awarded a contract. The court held:

"[A] bid in response to a solicitation therefor constitutes no more than an offer and until its acceptance, a contract does not exist. [Citation omitted.] The purpose of bidding is to secure competition, save public funds, and to guard against favoritism, improvidence and corruption. Such statutes are deemed to be for the benefit of the taxpayers and not the bidders, and are to be construed for the public good.

. . . .

"Although the lowest responsible bidder may have standing to timely challenge the rejection of his bid and to compel the award of the contract to him . . . it does not follow that such bidder may recover damages after the project has been completed by the contractor whose bid was accepted." 94 Nev. at 118-19.

The court's rationale, in part, was as follows:

"Although the lowest responsible bidder may have standing to timely challenge the rejection of his bid and to compel the award of the contract to him . . . it does not follow that such bidder may recover damages after the project has been completed by the contractor whose bid was accepted. A timely challenge is compatible with the public interest since it serves to force compliance with the purpose of the bidding procedure. After the project is completed, however, it is difficult to perceive how the public interest is served by investing the low bidder with a cause of action for damages. The public already has paid the difference between the lowest bid and the bid which was accepted. The taxpayer should not further be penalized." 94 Nev. at 119.

A case which warrants discussion in some depth is *Funderburg Bldrs. v. Abbeville Cty. Mem. Hosp.*, 467 F. Supp. 821 (D. S.C. 1979), as it contains a good summary of the applicable case law

and rests on a sound rationale. In *Funderburg*, plaintiff brought an action to enjoin the defendants from awarding a construction contract to any entity other than plaintiff. The contract was subject to a competitive bidding statute mandating the contract be awarded to the lowest responsible bidder. In permitting the injunction action, the court in *Funderburg* reasoned as follows:

"[T]he Hospital questions the standing of a disappointed bidder to sue under competitive bidding statutes. Clearly the statutes were enacted for the benefit of the public, whose funds finance the project. Indeed, some courts have held that the statutes create no justiciable rights in those who submit bids. *Joseph Rugs, Inc. v. Henson*, 190 F. Supp. 281 (D. Conn. 1960). However, this Court thinks the better view is that the lowest responsible bidder should have access to equitable relief under the statutes. *Scanwell Laboratories Inc. v. Shaffer*, 137 U.S. App. D.C. 371, 424 F.2d 859 (1970); *Richardson Engineering Co. v. Rutgers State University*, 51 N.J. 207, 238 A.2d 673 (1968); *Quincy Ornamental Iron Works, Inc. v. Findlen*, 353 Mass. 85, 228 N.E.2d 453 (1967); *Sternberg v. Board of Commissioners of Tangipahoa Drainage Dist. No. 1*, 159 La. 360, 105 So. 372 (1925). *See Carpet City, Inc. v. Stillwater Municipal Hospital Authority*, 536 P.2d 335 (Okl. 1975); *City of Phoenix v. Wittman Contracting Co.*, 20 Ariz. App. 1, 509 P.2d 1038 (1973); *City of Inglewood v. Superior Court*, 7 Cal. 3d 861, 103 Cal. Rptr. 689, 500 P.2d 601 (1972); *Cf. Gulf Oil Corp. v. Clark County*, 575 P.2d 1332 (Nev. 1978). As the court in *Scanwell Laboratories, supra*, reasoned, it would be straining the artificiality of standing beyond its limits to deny judicial review to one who is seriously harmed by an illegal action." 467 F. Supp. at 823-24.

## Continuing:

"Injunction and mandamus are the proper remedies to compel compliance with public contract award procedures. *Carpet City, Inc. v. Stillwater Municipal Hospital Authority*, 536 P.2d 335 (Okl. 1975); *Federal Electric Corp. v. Fasi*, 527 P.2d 1284 (Haw. 1974); *City of Phoenix v. Wittman Contracting Co.*, 20 Ariz. App. 1, 509 P.2d 1038 (1973); *City of Inglewood v. Superior Court*, 7 Cal. 3d 861, 103 Cal. Rptr. 689, 500 P.2d 601 (1972); *Cf. Gulf Oil Corp. v. Clark County*, 575 P.2d 1332 (Nev. 1978). In the present case, it is clear that an injunction and declaratory judgment are the only adequate means of protecting the public interest, the integrity of the competitive bidding process, and the rights of the individual bidder. If the Hospital is allowed to proceed with award to other than the lowest responsible, responsive bidder, Funderburg, the public has no legal remedy for the senseless and unlawful waste of public funds. Moreover, if it is learned that Abbeville County is not required to comply with statutory requirements and its own representations that it will award to the lowest responsible bidder, competition for county [projects] will no longer receive the benefit of the lowest competitive price.

"Finally, it is clear that Funderburg has no adequate remedy if the contract is wrongfully awarded to other than the lowest responsible bidder. It is well recognized that a construction contractor must bid on a number of jobs in order to submit the lowest bid on one and that the contractor must depend on the limited

number of jobs it wins not only to earn a profit but also to absorb the cost of maintaining its organization and even to keep its organization together. For a contractor to arbitrarily be deprived of one of the jobs on which it is the lowest responsible bidder, not only deprives it of anticipated profit but also throws an undue overhead burden on the remainder of the contractor's work and may cause the contractor to lose key field personnel that it cannot readily employ. Nevertheless, notwithstanding this severe adverse impact, it has been uniformly held that a disappointed bidder may not recover even its anticipated profits. [Citations omitted.] It is this clear lack of an adequate legal remedy that will dissuade contractors from competing where competitive bidding procedures are not equitably enforced." 467 F.Supp. at 825.

In the case before us, plaintiff did not commence its action until November 18, 1982—long after the contract had been awarded to the second lowest bidder and the contract executed. Plaintiff is not seeking to interfere with awarding of the contract or to have the contract awarded to itself. Rather, plaintiff seeks only damages for not having been awarded the contract. The City, then, would have no opportunity to correct any problems in the handling of the bidding that might be established in order to comply with the requirement of K.S.A. 13-1017. Assuming the City did err in awarding the contract to the second lowest bidder and paid approximately $20,000 too much for the work, how is the public interest served by awarding lost profits to the plaintiff? This would only add to the public's cost for the project.

After having carefully considered the matter, we conclude:
1. A bid in response to a solicitation constitutes no more than an offer and, until its acceptance, a contract does not exist.
2. The purpose of K.S.A. 13-1017, the competitive bidding statute applicable to cities of the first class, is the protection of the public rather than the bidders thereunder. Particularly, the statute is intended to save public funds and to guard against favoritism, improvidence and corruption.
3. An unsuccessful bidder on a public works project may not predicate a cause of action for damages against a public body solely upon an alleged violation of K.S.A. 13-1017. An unsuccessful bidder's remedy is to seek injunctive relief preventing the award of the contract to one not legally entitled thereto.

The defendant City was clearly entitled to summary judgment entered in its favor in accordance with the rationale herein set forth. The district court entered summary judgment in favor of the defendant City on the basis of governmental immunity under

the Kansas Tort Claims Act, K.S.A. 75-6101 *et seq.* The judgment of a trial court, if correct, is to be upheld, even though the court may have relied upon a wrong ground or assigned an erroneous reason for its decision. *State v. Durst*, 235 Kan. 62, 69, 678 P.2d 1126 (1984); *Farmers State Bank v. Cooper*, 227 Kan. 547, 556, 608 P.2d 929 (1980); *Pierce v. Board of County Commissioners*, 200 Kan. 74, 81, 434 P.2d 858 (1967); *Vap v. Diamond Oil Producers, Inc.*, 9 Kan. App. 2d 58, Syl. ¶ 6, 671 P.2d 1126 (1983). The judgment of the district court must, accordingly, be affirmed.

By virtue of the result herein, other issues raised need not be addressed.

The judgment is affirmed.