[Civ. No. 42525. Second Dist., Div. Three. June 26, 1974.]

SWINERTON & WALBERG CO.,
Plaintiff, Cross-defendant and Respondent, v.
CITY OF INGLEWOOD-LOS ANGELES COUNTY CIVIC CENTER
AUTHORITY et al.,
Defendants, Cross-complainants and Respondents;
ARGO CONSTRUCTION CO., INC.,
Cross-complainant and Appellant.

## COUNSEL

Shapiro & Maguire, Everett W. Maguire and Anthony Saul Alperin for Cross-complainant and Appellant.

Stephens, Jones, La Fever & Smith, R. Wicks Stephens II and Lawrence D. Lewis for Plaintiff, Cross-defendant and Respondent.

Donald E. Olson, City Attorney, and Mark L. Dees, Assistant City Attorney, for Defendants, Cross-complainants and Respondents.

## OPINION

**COBEY, J.**—Cross-complainant, Argo Construction Co., Inc. (Argo), appeals from a judgment (Code Civ. Proc., § 581d) dismissing, pursuant to Code of Civil Procedure section 581, subdivision 3, Argo's cross-action against cross-defendants, City of Inglewood-Los Angeles County Civic Center Authority (Authority), City of Inglewood (City), County of Los Angeles (County), and Swinerton & Walberg Co. (Swinerton). The dismissal of Argo's cross-action followed the sustaining, without leave to amend, of the general demurrers of the Authority, the City, and Swinerton to Argo's cross-complaint and answer, the striking of these pleadings and the entry of Argo's default as to the Authority and the City's cross-complaint.[1]

---

[1] All section references hereafter are to the Government Code unless otherwise indicated.

Argo, the lowest monetary bidder on a public works contract awarded by the Authority, in its cross-complaint against the Authority, the City, the County and Swinerton, the second lowest monetary bidder and the recipient of the contract, alleged against the public entities three causes of action—the first in tort for breach of statutory duty, the second in contract (promissory estoppel) and the third for declaratory relief. The last cause of action was pled against Swinerton as well.

We shall now consider whether Argo stated in this pleading facts sufficient to constitute any of the foregoing causes of action it alleged.

### The First Cause of Action—Tort

■   The first question posed is whether the misaward by a public entity (the Authority) of a public works contract to one (Swinerton) other than the lowest responsible bidder (Argo) gives to the latter a cause of action in tort for monetary damages against the public entity.[2] This precise question has been answered in the negative by the Third District of this statewide court less than four years ago in *Rubino v. Lolli,* 10 Cal.App.3d 1059 [89 Cal.Rptr. 320]. That decision, of course, is not binding upon us. (See *Danley v. Superior Court,* 64 Cal.App. 594, 599 [222 P. 362]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 667, p. 4580.) But we find its rationale quite persuasive. There the court pointed out that competitive bidding requirements appear to have been imposed solely for the benefit and protection of the public rather than for the benefit of the bidders. (*Rubino,* p. 1062.) The court consequently held that the misaward of a public works contract to one other than the lowest responsible bidder constitutes only an abuse of discretion by the awarding entity in determining the identity of such bidder and therefore the making of the misaward comes within the discretionary immunity to tort liability established by sections 815, 815.2, subdivision (b), and 820.2. (*Id.,* pp. 1063-1064.) Thus, in *Rubino* recovery of monetary damages in tort by the lowest responsible bidder was denied on the basis of discretionary immunity.

Argo urges us not to follow *Rubino,*[3] but instead to follow, in part at

---

[2]The facts and the law as to the misaward of this contract are set forth in *City of Inglewood-L.A. County Civic Center Auth.* v. *Superior Court,* 7 Cal.3d 861 [103 Cal.Rptr. 689, 500 P.2d 601]. We judicially notice this opinion pursuant to Evidence Code section 452, subdivision (c), and include it in our consideration of the sufficiency of Argo's cross-complaint. (See Code Civ. Proc., § 430.30, subd. (a); *Weil* v. *Barthel,* 45 Cal.2d 835, 837 [291 P.2d 30]; *Saltares* v. *Kristovich,* 6 Cal.App.3d 504, 510 [85 Cal.Rptr. 866].)

[3]One of the grounds advanced by Argo for our so doing is that the misaward of the contract by the Authority did not constitute a basic policy decision on its part as

least, *Southern Cal. Acoustics Co.* v. *C. V. Holder, Inc.,* 71 Cal.2d 719 [79 Cal.Rptr. 319, 456 P.2d 975], where our Supreme Court held that a listed subcontractor may enforce his statutory right under section 4107 to perform the subcontract by an action for monetary damages against the prime contractor to recover the benefit of the bargain the listed subcontractor would have realized if he had not been wrongfully deprived of the subcontract. (*Id.,* p. 727.) In this case our Supreme Court determined that the purpose of the basic statute involved (Subletting and Subcontracting Fair Practices Act) was to protect both the public and subcontractors from the proscribed evils of unfair bid peddling and bid shopping. (*Id.*) Its basis for so determining was the just-stated title of the statute and section 4101, which has always read, since its enactment in 1963, as follows: "The Legislature finds that the practices of bid shopping and bid peddling in connection with the construction, alteration, and repair of public improvements often result in poor quality of material and workmanship to the detriment of the public, deprive the public of the full benefits of fair competition among prime contractors and subcontractors, and lead to insolvencies, loss of wages to employees, and other evils."

We have no quarrel with this determination, but in our view, it has no application to the competitive bidding requirements involved in this case. There is nothing in these requirements, as there was in the construction industry's Fair Practices Act just quoted, to lead one to infer reasonably that competitive bidding requirements were imposed for the benefit of the bidders as well as for the benefit of the public. Finally, we note that the *Rubino* court was not unaware of the *Southern Cal. Acoustics Co.* decision.[4] (*Rubino, supra,* p. 1064.)

---

required by *Johnson* v. *State of California,* 69 Cal.2d 782, 793-794 [73 Cal.Rptr. 240, 447 P.2d 352], for the invocation of the defense of discretionary immunity. We disagree. An elaborate evaluation of the performance potentials of the three lowest monetary bidders was followed. (See *City of Inglewood-L.A. County Civic Center Auth.* v. *Superior Court, supra,* 7 Cal.3d 861, 869-870.)

The essential requirement of section 820.2—a causal connection between the exercise of the discretion and the injury—plainly existed. (See *McCorkle* v. *City of Los Angeles,* 70 Cal.2d 252, 262 [74 Cal.Rptr. 389, 449 P.2d 453].)

[4]We note that in the *Southern Cal. Acoustics Co.* decision our Supreme Court held that because of section 815 the listed subcontractor could not recover monetary damages from the school district for the violation of section 4107 and further could not recover damages for breach of contract because the listed subcontractor was, at most, an incidental beneficiary of the prime contract. (*Southern Cal. Acoustics Co., supra,* pp. 727-728.)

The situation in the case before us differs from that of *Rubino* in that here we

Accordingly, we hold that Argo did not state facts in its cross-complaint sufficient to constitute a cause of action in tort for breach of a statutory duty against the Authority, the City and County.

### The Second Cause of Action—Contract

■ Generally speaking, there are three types of relief available to one who has been damaged—preventive, specific and monetary. Argo in the prior litigation obtained preventive relief. As pointed out in the cases cited in *Rubino,* at page 1062, specific relief has been. held to be unavailable to one in Argo's position because of the privilege (as here) of the public entity to reject all bids. In any event, in this case it is now too late for such relief to be effective. This leaves only monetary relief and we have just held that Argo may not have monetary relief in tort.

Therefore, the second question we must answer is whether Argo may recover such monetary relief in contract from the Authority, the City, and the County. It seeks monetary damages of approximately $141,500, consisting largely in (a) the expenses it incurred in its unsuccessful participation in the competitive bidding process, (b) the monies it expended in its successful aforementioned prior litigation to set aside the award of the contract to Swinerton, and (c) in the profits, etc. it allegedly lost by reason of its failure to obtain the award of the contract.

The cause of action in promissory estoppel[5] alleged is apparently based on section 814[6] and Restatement of Contracts, section 90.[7] If the re-

know from the previously mentioned decision of our Supreme Court (7 Cal.3d 861, 869-870) just how the Authority exercised its discretion in awarding the contract to Swinerton.

[5]The cause of action is mistakenly alleged in the language of estoppel in pais instead of contract, but this mistake may be corrected by amendment if such is hereafter permitted.

[6]Section 814, a portion of the Governmental Tort Liability Act of 1963, provides that nothing in the act affects liability based on contract.

[7]Section 90 reads: "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

In the current proposed Restatement Second of Contracts (Tent. Drafts Nos. 1-7 (1973)), section 90 has been reworded slightly. Subdivision (1) of the proposed section now reads: "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. *The remedy granted for breach may be limited as justice requires."* (Italics supplied.)

This doctrine may be applied against public entities in appropriate circumstances.

quirements of the Restatement section have been met in the instant case, an informal contract (requiring neither assent nor consideration) between the Authority and Argo to award the public works contract to Argo as the lowest responsible bidder" resulted (Rest., Contracts (1932) § 85)[8] and Argo became entitled at least in some part to the damages that ensued from the Authority's breach of this informal contract. (See *Drennan* v. *Star Paving Co.,* 51 Cal.2d 409, 413 [333 P.2d 757].) Clearly, the Authority promised in its solicitation of bids to award the contract to the lowest responsible bidder and Argo's reasonable and detrimental reliance upon this promise brings section 90 into play unless the final clause of the section prevents this result.

In this connection Restatement section 90 provides that a promise, meeting its other requirements, is binding "if injustice can be avoided only by enforcement of the promise." The public entities contend that such a cause of action against them cannot be recognized in Argo in view of our conclusion that the competitive bidding requirements on contracts for public works exist to protect the public rather than the bidders. They point out (as we indicated earlier) that Argo could not have compelled the Authority to award the contract to it because of the provision in the notice soliciting bids that any and all bids might be rejected. (See *Rubino* v. *Lolli, supra,* 10 Cal.App.3d 1059, 1062, and cases there cited.) To them the preventive relief that Argo obtained in the prior litigation was granted to protect the public interest and not that of Argo.

We disagree. It seems to us that injustice to Argo, the promisee, can be avoided only by at least the partial enforcement of the Authority's promise to it to award the contract to it as the lowest responsible bidder. As we have already stated earlier, Argo's reliance upon this promise was both reasonable and detrimental to it. To hold that Argo was not entitled to rely upon this promise because of the just-mentioned reservation of the right to reject any and all bids would make the Authority's promise an illusory one and render the whole competitive bidding process nugatory. In contract law generally monetary damages for breach of contract may be awarded where specific relief is unavailable because of the discre-

(See *Youngman* v. *Nevada Irrigation Dist.,* 70 Cal.2d 240, 249-251 [74 Cal.Rptr. 398, 449 P.2d 462]; *Hilltop Properties* v. *State of California,* 233 Cal.App.2d 349, 364-365 [43 Cal.Rptr. 605, 37 A.L.R.3d 109]; Annot. (1956) Promissory Estoppel, 48 A.L.R.2d 1069, 1086.)

[8]This section is now proposed to be repealed as unnecessary. (See Tentative Restatement, *supra,* p. 182.)

tionary nature of the latter relief. (See Rest., Contracts, *supra*, § 358, et seq.) The public obviously has both an economic and a moral interest in public works contracts being awarded to the lowest responsible bidders. An award of monetary damages to the lowest responsible bidder for the misaward of a public works contract would be in the public interest as well as that of the injured bidder because such an award would deter such misconduct by public entities in the future. Finally, as Mr. Justice Brandeis pointed out many years ago in his dissenting opinion in *Olmstead* v. *United States* (1928) 277 U.S. 438, 485 [72 L.Ed. 944, 960, 48 S.Ct. 564, 66 A.L.R. 376], since government by its conduct sets an example for all of us, it, above all, must obey its own laws. As pointed out by our Supreme Court in the prior litigation in this matter in footnote 4 at 7 Cal.3d 866, both the applicable statutes and the City's own charter required that the public works contract at issue be let to the lowest responsible bidder (which was Argo).

It would seem, however, that the damages that Argo may recover in promissory estoppel might well be limited to those it sustained directly by reason of its justifiable reliance upon the Authority's promise—in other words, to the expenses it incurred in its fruitless participation in the competitive bidding process. Professor Corbin has suggested this as an equitable measure of damages in certain promissory estoppel cases. (1A Corbin, Contracts (1963) § 200, p. 221.) The last sentence of the already quoted proposed Restatement subdivision—"the remedy granted for breach may be limited as justice requires"—likewise implies that this may be a just result in a particular case. Other courts have taken this view in cases which were really promissory estoppel cases. (See *Wheeler* v. *White* (Tex. 1965) 398 S.W.2d 93, 97; *Goodman* v. *Dicker* (1948) 169 F.2d 684, 685 [83 App.D.C. 353]; cf. *Terre Haute Brewing Co.* v. *Dugan* (8th Cir. 1939) 102 F.2d 425, 427.) On the other hand, the opinions of the commentators regarding the justice of limited as opposed to complete contractual recovery (see Civ. Code, § 3300) in promissory estoppel is divided. (See Note, *Promissory Estoppel—Measure of Damages* (1960) 10 Vand.L.Rev. 705, 708.) But in any event the decision as to the proper measure of damages for breach of the promissory estoppel contract in this case must initially be that of the trial court.

We hold that Argo stated in its cross-complaint facts sufficient to constitute a cause of action in promissory estoppel against the public entities. What recovery Argo may attain on such cause of action will have to await the trial of the action and the trial court's consideration of what is just under all of the circumstances—including Swinerton's possible recovery in *quantum meruit*.

## The Third Cause of Action

■ The general demurrers of the Authority, the City and Swinerton to the third cause of action (declaratory relief) in Argo's cross-complaint should have been overruled. We have just held that a contractual cause of action against the public entities existed in Argo. Argo also alleged on information and belief in the cause of action under consideration that Swinerton and the public entities conspired to make the misaward of the contract to Swinerton with resulting damage to Argo. These allegations of conspiracy are sufficient to constitute a cause of action therefor. (See 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 774, p. 2390.) For the purpose of determining the correctness of the trial court's ruling on Swinerton's general demurrer we must accept these allegations of conspiracy as true. (*Hauger* v. *Gates,* 42 Cal.2d 752, 755 [269 P.2d 609].) This being so, Argo has pled facts sufficient to constitute a cause of action in declaratory relief against Swinerton as well.

## Disposition

The judgment of dismissal of Argo's cross-action is reversed except as to the sustaining of the general demurrer of the Authority and the City to the first cause of action alleged in Argo's cross-complaint. As to that, the judgment is affirmed. The trial court is directed to set aside its orders on the general demurrers of the Authority and the City to the second and third causes of action alleged in Argo's cross-complaint, its order on Swinerton's general demurrer to the third cause of action alleged in Argo's cross-complaint and its order striking Argo's cross-complaint and answer to the cross complaint of the City and the Authority. The trial court is further directed then to overrule the aforesaid general demurrers to the second and third causes of action alleged in Argo's cross-complaint. Appellant and respondents to bear their own costs on appeal.

Allport, Acting P. J., and Potter, J., concurred.