**FUNDERBURG BUILDERS, INC., Plaintiff,**

v.

**ABBEVILLE COUNTY MEMORIAL HOSPITAL et al., Defendants.**

Civ. A. No. 79–224.

United States District Court, D. South Carolina, Greenwood Division.

Feb. 26, 1979.

J. D. Todd, Greenville, S. C., Luther P. House, Jr., Smith, Currie & Hancock, Atlanta, Ga., for plaintiff.

John Linton, Thurmond Bishop, Marvin Infinger, Sinkler, Gibbs & Simons, Charleston, S. C., for defendants.

## ORDER

HEMPHILL, District Judge.

This matter is before the Court on the plaintiff's motion for a preliminary injunction. The plaintiff, a Georgia corporation whose principal place of business is in Augusta, Georgia, seeks to enjoin several South Carolina defendants [1] from awarding the construction contract for an addition to a public hospital, to any entity other than the plaintiff. Jurisdiction lies under 28 U.S.C. § 1332.

The parties do not dispute the facts. Abbeville County Memorial Hospital (Hospital) advertised for competitive bids on its new addition. The advertisement contained language to the effect that the Owner reserved the right to reject any and all bids and to award the contract in the best interests of the Owner. The "Invitations to Bid" forwarded to the plaintiff represented that it was the intent of the Hospital Board of Trustees to award the contract to the lowest responsible bidder.[2] In response, Funderburg Builders (Funderburg) submitted a bid of $468,529.00, which was the lowest received. However, on January 26, 1979, Funderburg was notified that the

---

1. Each of the abovenamed individual defendants is a resident of the State of South Carolina and are sued in their individual and representative capacities. The defendant, Abbeville County Memorial Hospital (operating through its Board of Trustees), is an entity operating in Abbeville County, South Carolina.

2. § 5.3.3 of AIA Document A701, "Instructions to Bidders" states:

It is the intent of the Owner to award a contract to the lowest responsible Bidder provided the Bid has been submitted in accordance with the requirements of the Bidding Documents, is judged to be reasonable, and does not exceed the funds available.

Board of Trustees intended to award the contract to the second lowest bidder, a South Carolina entity known as the Vector Corporation, whose bid was $472,977.00. No reason was given for the Board's action. Funderburg obtained a temporary restraining order on February 5, 1979, and now seeks a temporary injunction prohibiting the awarding of the contract to anyone other than the plaintiff, and a determination that the Hospital Board must consummate the contract with the plaintiff, Funderburg Builders.

Funderburg Builders asserts that the action of the Hospital in accepting the second lowest bid violates the competitive bidding statutes applicable to Abbeville County.[3] If so, the contract would be void and of no effect. *Fisher v. State*, 265 So.2d 817 (La. App.1972); *City of Inglewood v. Superior Ct.*, 7 Cal.3d 861, 103 Cal.Rptr. 689, 500 P.2d 601 (1972); *Van Antwerp v. Bd. of Comm'rs*

*of City of Mobile*, 217 Ala. 201, 115 So. 239 (1928).

Careful research has revealed no decision of the South Carolina courts construing this statutory provision or otherwise dealing with the issues raised in the present case. Therefore, to the extent such construction or other judicial determination is necessary, this Court must determine the ruling that it believes the South Carolina courts would adopt. *Kline v. Wheels by Kinney, Inc.*, 464 F.2d 184 (4th Cir. 1972).

■ Apart from the question of relief under the bidding statutes, the Hospital questions the standing of a disappointed bidder to sue under competitive bidding statutes. Clearly the statutes were enacted for the benefit of the public, whose funds finance the project. Indeed, some courts have held that the statutes create no justiciable rights in those who submit bids. *Jo-*

---

**3.** South Carolina Statutes No. 976 (1966) in relevant part, reads as follows:

An Act to Amend Sections 14–732 and 14–733, Code of Laws of South Carolina, 1962, as Amended, Relating to Purchases by The Purchasing Agent of Abbeville County, so as to Make Further Provision Therefor.

Be it enacted by the General Assembly of the State of South Carolina:

SECTION 1. Section 14–732 amended—purchasing by Abbeville County.—Section 14–732 of the 1962 Code, as amended by Act 439 of 1965, is further amended so as to make further, provision for the purchase of items by the *Purchasing Agent of Abbeville County* by striking it out in its entirety and inserting in lieu thereof the following:

Section 14–732. Every six months, or more often, if need be, the purchasing agent shall advertise weekly for two weeks in a newspaper of general circulation within Abbeville County and by posting on the courthouse door for all vehicles, implements, equipment and purchases of whatsoever nature and kind for the governing body, sheriff, clerk of court, treasurer, auditor, judge of probate, magistrate, for prison camp, roads and bridges, *buildings*, heat and fuel, motor oil, machinery, *or anything else needed for use in business of the county*. Such advertisements shall set forth the articles, approximately the amounts to be purchased and the conditions of sale and delivery. *The contracts shall be awarded to the lowest bidder for the period indicated*; provided, if a county resident's bid is reasonably close to a noncounty bid, the award may be made to the resident. In cases of emergency, the purchasing agent may

make county purchases without such advertisement or posting when the cost will not exceed three hundred dollars. When advertising or posting is not practical as deemed necessary, the purchasing agent may, upon approval by the county governing board, forego such advertising or posting. The purchasing agent may, upon approval by the county governing board, arrange with other officers or employees of the county for emergency purchasing. *No bill, account or claim of any kind whatsoever against the county shall be paid for any purchase which is not made in accordance with the provisions of this section.* (Emphasis added).

South Carolina Statutes No. 489 (1916) reads in part:

An Act to Prescribe for the County Board of Commissioners for Abbeville County Certain Additional Duties, and Books of Accounts to be Kept by Them.

\* \* \* \* \* \*

§ 12. Advertisement for Bids on Construction—Award—The County Board of Commissioners shall advertise for at least two weeks in at least two issues of a newspaper published in the County, or post, in three or more conspicuous places likely to give the most publicity thereof, for bids on new or repair work on the roads and bridges of the county, or any of the public buildings of the county, where the cost thereof will exceed twenty-five ($25) dollars, and the contract therefor according to plans and specifications, a duplicate of which shall be kept on file in the office of the Board, *shall be awarded to the lowest responsible bidder.* (Emphasis added).

seph Rugs, Inc. v. Henson, 190 F.Supp. 281 (D.Conn.1960). However, this Court thinks the better view is that the lowest responsible bidder should have access to equitable relief under the statutes. Scanwell Laboratories Inc. v. Shaffer, 137 U.S.App.D.C. 371, 424 F.2d 859 (1970); Richardson Engineering Co. v. Rutgers State University, 51 N.J. 207, 238 A.2d 673 (1968); Quincy Ornamental Iron Works, Inc. v. Findlen, 353 Mass. 85, 228 N.E.2d 453 (1967); Sternberg v. Board of Commissioners of Tangipahoa Drainage Dist. No. 1, 159 La. 360, 105 So. 372 (1925). See Carpet City, Inc. v. Stillwater Municipal Hospital Authority, 536 P.2d 335 (Okl.1975); City of Phoenix v. Wittman Contracting Co., 20 Ariz.App. 1, 509 P.2d 1038 (1973); City of Inglewood v. Superior Court, 7 Cal.3d 861, 103 Cal.Rptr. 689, 500 P.2d 601 (1972); Cf. Gulf Oil Corp. v. Clark County, 575 P.2d 1332 (Nev. 1978). As the court in Scanwell Laboratories, supra, reasoned, it would be straining the artificiality of standing beyond its limits to deny judicial review to one who is seriously harmed by an illegal action.

■ The defendants cite City of Spartanburg v. Blalock, 223 S.C. 252, 75 S.E.2d 369 (1953), as precluding the County from interfering with the operation of the Hospital. Although Blalock held that the Commissioners of Public Works were somewhat autonomous to the bond issuing authority, the case stated that, "If the Commissioners should fail to provide sufficient rates or otherwise neglect to comply with the requirements for the protection of the bondholders, no doubt the City Council could compel them to do so." 75 S.E.2d at 366. Thus, Blalock does not automatically preclude county intervention. Moreover, the issue is not whether the County Purchasing Agent or County Council has authority over any Hospital funds. The importance of the bidding statutes cited by the plaintiff is that they es-

tablish the law and custom of Abbeville County which the Hospital is bound to follow under S.C.Code §§ 44–7–730.[4] Although there are no cases offering guidance, this Court interprets "bids advertised" to include the final step of awarding the contract.

■ The statutes mandate the award of the contract to "the lowest responsible bidder" or the "lowest bidder for the period indicated." The Hospital could have awarded Vector Corporation the contract only upon a finding that Funderburg was an "irresponsible bidder."[5] City of Inglewood v. Superior Court, 7 Cal.3d 861, 103 Cal.Rptr. 689, 500 P.2d 601 (1972). At the hearing on the issuance of a preliminary injunction, evidence was adduced that the Board of Trustees undertook an investigation of the various bidders through the Hospital administrator and the architect for the project. The administrator admitted that the Board obtained no unfavorable reports on Funderburg. Furthermore, all references interviewed indicated that Funderburg performed well. Mr. Funderburg testified that his company was licensed by South Carolina to construct projects of this magnitude, and that he was experienced in hospital construction. On the evidence presented, it is clear the Hospital could not have found Funderburg to be irresponsible, therefore any contract awarded to someone other than the plaintiff, must be null and of no effect.

The language in the advertisement and bidding document reserving the discretion to "reject any and all bids" and to award the contract in the public interest, cannot change the result. The only grounds on which a bid may be rejected are that it is not accompanied by the required bid security or any other required data; that it is incomplete or irregular; that it is unreasonable that it exceeds the funds available; or

---

4. S.C.Code § 44–7–730 reads: "No hospital building shall be erected or constructed until plans and specifications have been made therefor and adopted by the board of hospital trustees and bids advertised for according to the law and custom in regard to other county buildings. [Emphasis added].

5. Funderburg was clearly the "lowest bidder for the period indicated." Thus, should Funderburg qualify as the "lowest responsible bidder", there will be no question as to his meeting the statutory qualifications.

that it is submitted by an unreasonable bidder. To allow rejection for other reasons would undermine the integrity of the competitive bidding process. *See Commonwealth v. Gill*, 77 Mass.App. 581, 363 N.E.2d 267, 270 (1970) where the court stated:

> The applicable language of [the competitive bidding statute] provides that "[e]very contract . . . shall be awarded to the lowest responsible and eligible bidder on the basis of competitive bids publicly opened and read by such awarding authority forthwith upon expiration of the time for the filing thereof; provided, however, that such awarding authority may reject any and all bids, if it is in the public interest so to do."

> Except where all bids are rejected this statute requires the awarding of the contract to the lowest responsible and eligible bidder determined after competitive bids have been filed pursuant to a publicized invitation. The same is true of contracts governed by G.L. c. 149, §§ 44A–44L. Although it might appear that the word "any" in G.L. c. 30, § 39M (as well as in G.L. c. 149, § 44D) would allow rejection of the low bid so as to result in the awarding of the contract to a person not the lowest responsible and eligible bidder, a long line of cases has determined that contracts subject to those provisions cannot properly be awarded to one other than the lowest responsible and eligible bidder.

Since the hospital has not and cannot justify its rejection of Funderburg's bid on any of the above grounds, that rejection is clearly wrong.

█ Injunction and mandamus are the proper remedies to compel compliance with public contract award procedures. *Carpet City, Inc. v. Stillwater Municipal Hospital Authority*, 536 P.2d 335 (Okl.1975); *Federal Electric Corp. v. Fasi*, 527 P.2d 1284 (Haw. 1974); *City of Phoenix v. Wittman Contracting Co.*, 20 Ariz.App. 1, 509 P.2d 1038 (1973); *City of Inglewood v. Superior Court*, 7 Cal.3d 861, 103 Cal.Rptr. 689, 500 P.2d 601 (1972); *Cf. Gulf Oil Corp. v. Clark County*, 575 P.2d 1332 (Nev.1978). In the present case, it is clear that an injunction and declaratory judgment are the only adequate means of protecting the public interest, the integrity of the competitive bidding process, and the rights of the individual bidder. If the Hospital is allowed to proceed with award to other than the lowest responsible, responsive bidder, Funderburg, the public has no legal remedy for the senseless and unlawful waste of public funds. Moreover, if it is learned that Abbeville County is not required to comply with statutory requirements and its own representations that it will award to the lowest responsible bidder, competition for county will no longer receive the benefit of the lowest competitive price.

Finally, it is clear that Funderburg has no adequate remedy if the contract is wrongfully awarded to other than the lowest responsible bidder. It is well recognized that a construction contractor must bid on a number of jobs in order to submit the lowest bid on one and that the contractor must depend on the limited number of jobs it wins not only to earn a profit but also to absorb the cost of maintaining its organization and even to keep its organization together. For a contractor to arbitrarily be deprived of one of the jobs on which it is the lowest responsible bidder, not only deprives it of anticipated profit but also throws an undue overhead burden on the remainder of the contractor's work and may cause the contractor to lose key field personnel that it cannot readily employ. Nevertheless, notwithstanding this severe adverse impact, it has been uniformly held that a disappointed bidder may not recover even its anticipated profits. *Paul Sardella Construction Co. v. Braintree Housing Authority*, 329 N.E.2d 762 (Mass.App.1975); *Swinerton & Walberg Co. v. City of Inglewood*, 40 Cal.App.3d 98, 114 Cal.Rptr. 834 (1974). It is this clear lack of an adequate legal remedy that will dissuade contractors from competing where competitive bidding procedures are not equitably enforced.

It appears to this Court that all parties have fully presented their claims, and that no further evidence will be presented. It is

proper in this situation to involve the consolidation provision of Rule 65, allowing the hearing on the merits to be consolidated with the hearing of the motion. Accordingly, it is the Order of this Court that each and all of the defendants are hereby permanently enjoined from taking any action which would cause the contract for an addition to the Abbeville County Memorial Hospital to be awarded to or performed by any party except the plaintiff. It is further mandated that the defendants award said contract to the plaintiff, Funderburg Builders, on such terms as would have applied had the contract originally been awarded to the plaintiff.

AND IT IS SO ORDERED.