MODIFIED OPINION

No. 88,675

RITCHIE PAVING, INC., *Appellant*, v. CITY OF DEERFIELD, KANSAS, *Appellee*.

67 P.3d 843

Modification of opinion filed January 24, 2003 (see *Ritchie Paving, Inc. v. City of Deerfield*, 275 Kan. 157, 61 P.3d 669 [2003]). Modified opinion filed May 2, 2003.

*John P. Woolf*, of Triplett, Woolf & Garretson, LLC, of Wichita, argued the cause, and *Jerald W. Rogers*, of the same firm, was with him on the briefs for appellant.

*Allen G. Glendenning*, of Watkins, Calcara, Rondeau, Friedeman, Bleeker, Glendenning & McVay, Chtd., of Great Bend, argued the cause, and *Mark A. Rondeau*, of the same firm, was on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Ritchie Paving, Inc. sued the City of Deerfield, Kansas, seeking to recover its expenses in preparing the low, but unsuccessful, bid for a Deerfield street improvement project. The district court granted Deerfield's motion to dismiss for failure to state a claim upon which relief may be granted. Ritchie Paving appealed. This court transferred the appeal from the Court of Appeals. K.S.A. 20-3018(c).

The following facts are taken from the district court's decision granting Deerfield's motion to dismiss and from Ritchie Paving's petition, the allegations of which were accepted as true by the district court.

On April 17, 2000, Deerfield let bids for a street improvement project. The bid form required a bidder to supply commencement and completion dates within the calendar year 2000 for the project, with the commencement date no later than October 17. The project was to be completed within 75 days.

Ritchie Paving submitted a timely bid for $760,502.20 and specified a commencement date of October 1, 2000. Ritchie Paving's bid was the lowest bid by more than $31,000. It was rejected.

Deerfield's bid documents defined "the successful bidder as the lowest, qualified, responsible, and responsive bidder to whom owner makes an award." The bid documents also stated: "If the contract is to be awarded, award will be to the lowest, responsible, responsive bidder whose evaluation by owner indicates to owner that the award will be in the best interests of the project."

The following reasons were given on behalf of Deerfield for not accepting Ritchie Paving's bid:

"1. A high probability that bad weather could delay the completion of the project;

"2. That the grant from the federal government would be lost if the project were not completed by April 1, 2001;

"3. That a dirt hauling agreement between Deerfield and Kearny County required that the project be completed before the end of the summer 2000;

"4. That Deerfield might have to pay a higher interest rate on their bonds because of a later completion date."

Deerfield's bid documents did not indicate that any of these factors were to be considered by bidders.

Ritchie Paving sued Deerfield, framing its cause of action as promissory estoppel/detrimental reliance. Neither fraud nor other independent tort was alleged. Ritchie Paving alleged that it relied on the bid documents, that Deerfield knew it would rely on the bid documents, and that Deerfield's rejection of its bid was based entirely on requirements not stated in the bid documents. Ritchie Paving alleged that it would not have incurred the expenses of preparing and submitting a bid if it had been informed of Deerfield's requirements. Ritchie Paving sought to recover its expenses of $6,642.50. The question we must answer is whether an unsuccessful low bidder on a public works project has a cause of action for recovery of its bidding expenses absent allegations of fraud or other independent tort.

On a motion to dismiss for failure to state a claim upon which relief can be granted, the question is whether, in the light most favorable to plaintiff and with every doubt resolved in plaintiff's favor, the petition states any valid claim for relief. On appeal, as in the trial court, the questions are ones of law over which this court has unlimited review. *Nichols v. Kansas Political Action Committee*, 270 Kan. 37, 39, 11 P.3d 1134 (2000).

In granting Deerfield's motion to dismiss, the district court found *Sutter Bros. Constr. Co. v. City of Leavenworth*, 238 Kan. 85, 708 P.2d 190 (1985), to be controlling. Comparing *Sutter Bros.* with the present case, the district court stated:

"There, as in this action, the Plaintiff does not seek to enjoin the award or issuance of the contract, to require new bids to be submitted, or to be awarded the contract. Rather, the Plaintiff seeks only damages sustained by it as a result of not receiving the contract. There is no allegation of fraud or other independent tort in this action. . . .

. . . .

"Although the Plaintiff attempts to cloak its theory of recovery in promissory estoppels/detrimental reliance theories, the *Sutter Brothers* court has clearly stated that the bid is no more than an offer and that a contract does not exist until it is accepted.

"We must examine the statements made by the Defendant's representatives. It is obvious that those factors mentioned by the Defendant's representatives were concerns of the Defendant when considering the submitted bids. There is no indication in the bid documents that they were requirements for bidding or that they were prerequisites to accepting any successful bid. Clearly, the Defendant's

representatives were mentioning intangibles that were of concern to them, and which were apparently answered by the next lowest bidder.

. . . .

". . . Kansas has long recognized that the lowest responsible bidder is not merely an objective term. In *D. F. Williams v. City of Topeka*, 85 Kan. 857, [861-62, 118 Pac. 864 (1911)], the Court adopted with approval the following language: 'In determining who is the lowest responsible bidder, or the lowest and best bidder, the duty of the board or officer is not merely ministerial, but partakes of a judicial character requiring the exercise of discretion and judgment. . . .' Certainly, the Defendant had the right and the duty to consider those intangible factors which it perceived to be in the best interest of the project and the taxpayers whom it served. Obviously, there had to be a bid which alleviated those concerns and which the Defendant felt more than offset the difference in the bid price.

"The Plaintiff further attempts to cloak its request for expenses in preparation of the bid in terms other than for damages. However, Black's Law Dictionary, 7th edition, clearly defines actual damages as an amount awarded to a complainant to compensate for proven injuries or loss; damages that repay actual losses. This is, clearly, an action for damages.

"The law does not protect one bidder against another bidder who may be more creative, innovative, or insightful with regard to the project at hand. The Court notes that this case was not filed until December 2000 when the Plaintiff realized in May of 2000 that its bid had been rejected. Certainly, the Plaintiff had the opportunity to follow the preferred method of contesting the award of the bid by seeking injunctive relief in a timely fashion."

On appeal, Ritchie Paving distinguishes *Sutter Bros.* from the present case principally on the ground that in *Sutter Bros.*, the unsuccessful low bidder sought to recover profits lost when it was not awarded the contract, but Ritchie Paving seeks to recover its bid preparation expenses. Ritchie Paving contends that *Sutter Bros.* does not reach the question in this case and, thus, does not preclude a cause of action for the recovery of bidding expenses by a bidder who reasonably relied on incomplete bidding requirements in deciding to submit a bid. Ritchie Paving further argues that cases cited with approval in *Sutter Bros.* support its position.

Deerfield contends that the distinction Ritchie Paving draws between *Sutter Bros.* and this case is a distinction without a difference. According to Deerfield, the rule of *Sutter Bros.* is that an unsuccessful bidder's only remedy is to secure injunctive relief so that an unsuccessful bidder is barred from pursuing any action in

damages, other than fraud or an independent tort, against a public body.

The parties stipulated that K.S.A. 13-1017 "controls the bidding process involved in this project, even though the City of Deerfield is a third-class city." The statute requires an estimate of the cost of proposed improvements to be submitted to the municipality's governing body. Where the estimate exceeds $2,000, "sealed proposals for the improvement shall be invited by advertisement, published by the city clerk once in the official city paper. The governing body shall let all such work by contract to the lowest responsible bidder, if there is any whose bid does not exceed the estimate." K.S.A. 13-1017.

In *Sutter Bros.*, the City of Leavenworth advised prospective bidders on a highway project "that compliance with the City's equal opportunity and affirmative action program as set forth in Leavenworth, Kansas, Resolution B 321 . . . was a condition of bidding." 238 Kan. at 85-86. Sutter Bros. did not provide along with its bid the information required. After the bids were opened, Sutter Bros. was advised in writing by the city manager that it was the low bidder but, because the affirmative action plan it submitted with its bid was significantly deficient, he would recommend to the city commission that the contract be awarded to the second lowest bidder.

The City of Leavenworth's resolution authorized modification, prior to awarding of contract, of a submitted affirmative action program by bidders in order to bring it into conformance with the resolution's requirements. Sutter Bros. did not modify its submission, and the contract was awarded to the second lowest bidder. Several months later, after the contract had been executed, Sutter Bros. filed suit seeking lost profit damages for the City's failure to award the contract to it in violation of K.S.A. 13-1017.

The trial court granted summary judgment on the basis of governmental tort immunity. On appeal, this court reframed the matter, stating that the "fundamental question" was:

"Does an apparent low bidder, who is not awarded a public works project, have a cause of action at law for damages predicated solely upon alleged violation of

K.S.A. 13-1017, or is the remedy limited to an equitable action to enjoin the public body from awarding or entering into a contract with another?"

After looking at its own precedents, American Jurisprudence Second, and case law of several other jurisdictions, the court concluded that a disappointed bidder may not predicate a cause of action for damages on violation of K.S.A. 13-1017 but may seek injunctive relief to prevent the award of the contract to another. 238 Kan. at 92.

We agree with Ritchie Paving that there are important distinctions between the present case and *Sutter Bros.* Ritchie Paving's petition does not allege a violation of K.S.A. 13-1017. Instead, Ritchie Paving's petition was stated to be for a cause of action in promissory estoppel, alleging that Deerfield's refusal to award it the contract was based entirely on commencement and completion date requirements which it had no knowledge of at the time it prepared its bid because those requirements were not disclosed in the bid documents. Ritchie Paving further alleged that had it known of the undisclosed requirements, it would not have incurred the expenses of preparing a bid. The damages sought are expenses incurred as a result of preparing a bid. *Sutter Bros.* sought recovery in an action in law for lost profits for failure of the City of Leavenworth to award it the contract as the low bidder under K.S.A. 13-1017.

In *Swinerton & Walberg Co. v. City of Inglewood-L.A. County Civic Center Authority,* 40 Cal. App. 3d 98, 114 Cal. Rptr. 834 (1974), the unsuccessful bidder alleged in addition to a tort cause of action for breach of statutory duty a cause of action in promissory estoppel. The California court concluded that the unsuccessful bidder, Argo Construction Co., Inc. (Argo), stated a cause of action in promissory estoppel based on Restatement of Contracts, § 90, which states: "A promise which the promissary should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." See 40 Cal. App. 3d at 105.

The Civic Center Authority promised to award the contract to the lowest responsible bidder, and Argo reasonably relied on the

promise to its detriment in incurring the expenses of bid preparation. With regard to a cause of action in the circumstances, the California court expressed the view

"that injustice to Argo, the promisee, can be avoided only by at least the partial enforcement of the Authority's promise to it to award the contract to it as the lowest responsible bidder. . . . Argo's reliance upon this promise was both reasonable and detrimental to it. To hold that Argo was not entitled to rely upon this promise because of the . . . reservation of the right to reject any and all bids would make the Authority's promise an illusory one and render the whole competitive bidding process nugatory. In contract law generally monetary damages for breach of contract may be awarded where specific relief is unavailable because of the discretionary nature of the latter relief. [Citation omitted.] The public obviously has both an economic and a moral interest in public works contracts being awarded to the lowest responsible bidders. An award of monetary damages to the lowest responsible bidder for the misaward of a public works contract would be in the public interest as well as that of the injured bidder because such an award would deter such misconduct by public entities in the future." 40 Cal. App. 3d at 104-05.

The California court limited the damages that Argo could recover in promissory estoppel "to those it sustained directly by reason of its justifiable reliance upon the Authority's promise—in other words, to the expenses it incurred in its fruitless participation in the competitive bidding process." 40 Cal. App. 3d at 105.

In a recent case, the California Supreme Court considered the issues determined by the Court of Appeals in *Swinerton & Walberg* and reached the same conclusions. *Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority*, 23 Cal. 4th 305, 1 P.3d 63 (2000). The Los Angeles Metropolitan Transportation Authority (MTA) solicited bids to build a portion of the subway system. The bid documents set a minimum goal for bidders of 30 percent use of disadvantaged business enterprises (DBE). Kajima/Ray Wilson (Kajima) made the lowest bid by nearly a million dollars, but MTA awarded the contract to the second lowest bidder on the ground that Kajima had not satisfied the DBE participation goal. Kajima would have exceeded the goal but for an undisclosed practice of MTA to discount certain DBE participation based solely on terminology used by the bidder. MTA's practice was determined to be arbitrary, contrary to federal regulations, and an abuse

of discretion. The California Supreme Court granted review to determine whether, once injunctive relief is no longer available, the lowest responsible bidder who is wrongfully denied a public contract has a cause of action for monetary damages against the public entity.

The California Supreme Court looked to the Restatement (Second) of Contracts, § 90 (1979), which is worded slightly differently from the Restatement provision:

"A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires."

The court concluded that the promissory estoppel theory could be applied by an unsuccessful bidder to recover damages from public entities for misaward of a contract. In the California court's view, "allowing recovery of some measure of damages once injunctive relief is no longer effectively available furthers the purposes of the competitive bidding laws by encouraging proper challenges to misawarded public contracts by the most interested parties, and deterring government misconduct." 23 Cal. 4th at 314.

Noting that the competitive bidding statutes are enacted to benefit the public and that the doctrine of estoppel may not be invoked against a public entity where it effectively would defeat operation of a policy adopted for public protection, the California court concluded that a disappointed bidder should not be allowed to recover lost profits because it would not benefit the public. 23 Cal. 4th at 316-17. According to the California court, the majority of other jurisdictions likewise do not permit an unsuccessful bidder to recover lost profits but do allow recovery of bid preparation expenses. 23 Cal. 4th at 319-20 (state statutes and case law identified in footnotes 5 and 6). "These jurisdictions generally reason that while the competitive bidding statutes are enacted for the public's benefit, not the aggrandizement of the individual bidder, allowing recovery of bid preparation costs encourages proper challenges to misawarded public contracts by the most interested parties, and deters public entity misconduct." 23 Cal. 4th at 320.

In ruling that once injunctive relief is no longer effectively available, there is a cause of action against public entities in promissory estoppel for misaward of a contract with limited damages, the California Supreme Court believed that it was occupying the middle ground. It identified minority positions as either allowing disappointed bidders to recover lost profits as damages or disallowing any cause of action for damages to disappointed bidders. 23 Cal. 4th at 318, 320. In the latter category, *Sutter Bros.* is described as holding that there was no cause of action for damages and noting that the unsuccessful bidder commenced its damages action long after the contract had been executed by the successful bidder. 23 Cal. 4th at 318, n.4.

*Funderburg Bldrs. v. Abbeville Cty. Mem. Hosp.*, 467 F. Supp. 821 (D.S.C. 1979), the third case cited in *Sutter Bros.*, is mentioned by Ritchie Paving in its brief as relying on authorities that allow recovery of bidding expenses on a theory of promissory estoppel, including *Swinerton & Walberg*, 40 Cal. App. 3d 98. *Swinerton & Walberg* and *Paul Sardella Const. Co., Inc. v. Braintree Hous. Auth.*, 329 N.E.2d 762 (Mass. App. 1975), are cited in *Funderburg* for the proposition that "it has been uniformly held that a disappointed bidder may not recover even its anticipated profits," as support for the lack of an adequate legal remedy. 467 F. Supp. at 825. The federal court, it seems, did not include recovery of bidding expenses in its consideration of a legal remedy.

In *Funderburg*, the low bidder sought, not damages, but to enjoin a South Carolina public hospital from awarding a construction contract to another bidder. The federal court granted a permanent injunction in favor of the contractor. 467 F. Supp. at 826. A South Carolina statute required the bid to be awarded to the lowest responsible bidder. The hospital board intended without explanation to award the contract to the second lowest bidder, a South Carolina business, rather than to Funderburg Builders, the Georgia firm that submitted the low bid. The federal court stated: "On the evidence presented, it is clear the Hospital could not have found Funderburg to be irresponsible, therefore any contract awarded to someone other than the plaintiff, must be null and of no effect."

467 F. Supp. at 824. The federal court was convinced that the public interest would not be served if the lowest bid was rejected:

"In the present case, it is clear that an injunction and declaratory judgment are the only adequate means of protecting the public interest, the integrity of the competitive bidding process, and the rights of the individual bidder. If the hospital is allowed to proceed with award to other than the lowest responsible, responsive bidder, Funderburg, the public has no legal remedy for the senseless and unlawful waste of public funds. Moreover, if it is learned that Abbeville County is not required to comply with statutory requirements and its own representations that it will award to the lowest responsible bidder, competition for county [work] will no longer receive the benefit of the lowest competitive price." 467 F. Supp. at 825.

In the final step of its analysis, the federal district court combined its finding of a lack of an adequate legal remedy with a public policy consideration. Citing *Swinerton & Walberg* and *Paul Sardella*, the court stated: "It is this clear lack of an adequate legal remedy that will dissuade contractors from competing where competitive bidding procedures are not equitably enforced." 467 F. Supp. at 825.

As we have seen, *Swinerton & Walberg* provided a legal remedy under the theory of promissory estoppel and allowed recovery of bidding expenses but not of anticipated profits. Since *Funderburg* was decided, the *Swinerton & Walberg* rule has been adopted by the California Supreme Court as well as a number of other jurisdictions. In this vein, Ritchie Paving cites *Owen of Georgia, Inc. v. Shelby Cty.*, 648 F.2d 1084 (6th Cir. 1981). Applying Tennessee law, the federal Court of Appeals in *Owen of Georgia, Inc.* held that the disappointed low bidder may recover in promissory estoppel the expenses it incurred in preparing its bid as well as the litigation costs incurred in getting the misaward rescinded. 648 F.2d at 1096.

Common to all the cases discussed here that permit recovery of bidding expenses in promissory estoppel is a determination that there was no reasonable justification for not awarding the contract to the lowest bidder. In none of these cases was the lowest bidder irresponsible so as to remove it from the scope of the statutory phrase, the lowest responsible bidder. In contrast, in *Sutter Bros.*, 238 Kan. 85, there was no determination one way or the other.

Because the action was for damages and no injunctive relief had been sought, the court did not view the question whether Sutter Bros. was a responsible bidder within the meaning of the statute as material. Here, injunctive relief is no longer available, nor would it have effectively addressed Ritchie Paving's claim for bid preparation costs. We do not find *Sutter Bros.* controlling precedent on the issue of recovery of bid preparation costs. *Sutter Bros.* is distinguishable on its facts; the only issue we considered in *Sutter Bros.* was the recovery of lost profits for failure to award the contract to *Sutter Bros.* We agree with the California court's rationale in *Swinerton & Walberg* and *Wilson*, 23 Cal. 4th 305, and find it persuasive.

Here, the trial court opined that Deerfield was acting within established bidding procedures in considering the "intangible factors" of the probability of weather delays, which might affect the City's receipt of federal grant money, the possibility of higher bond interest, and utilization of the dirt hauling agreement with the county. The contrary view, and the better one, is that Deerfield was not acting within established bidding procedures by basing the award on factors that were not disclosed in the bid documents. Notwithstanding that the parties stipulated that K.S.A. 13-1017 controls, it does not. Stipulations as to what the law is are not effective and not controlling on this court. See *Urban Renewal Agency v. Reed*, 211 Kan. 705, 712, 508 P.2d 1227 (1973). Nor are we bound by agreements and admissions as to matters of law or legal conclusions. See *In re Estate of Maguire*, 204 Kan. 686, Syl. ¶ 5, 466 P.2d 358 (1970). However, the bidding document is binding on the City of Deerfield, and that document, in part, mirrors the statutory requirement of awarding the contract "to the lowest responsible bidder." Thus, although K.S.A. 13-1017 is not per se controlling, the competitive bidding principles encompassed in that statute are controlling as to the City of Deerfield.

The district court cited *Williams v. City of Topeka*, 85 Kan. 857, 118 Pac. 864 (1911), for the proposition that the statutory term "lowest responsible bidder" was not to be strictly construed. In *Williams*, the court stated that "[t]he word 'responsible' in the phrase 'lowest responsible bidder' in a statute providing for com-

petitive bids before awarding contracts . . . implies skill, judgment and integrity necessary to a faithful performance of the contract, as well as sufficient financial resources and ability." 85 Kan. 857, Syl. ¶ 1. Skill, judgment, integrity, and sufficient financial resources are qualities required in a contractor for successful completion of a public works project. They are not comparable to submission of a start date later than the undisclosed preference of the City.

It would have been simple for the City, which put great store by having the street improvements made during the summer of 2000, to have stated that preference in its bid documents. Instead, Deerfield specified that commencement date for the project could be no later than October 17. By setting the deadline for starting the project in mid-October and expressing no preference for an earlier commencement, Deerfield promised to award the contract to the lowest responsible bidder that gave project dates within the specifications. Ritchie Paving reasonably relied on the promise to its detriment in incurring the expenses of bid preparation. Thus, the theory of promissory estoppel, which this court has applied in *Kirkpatrick v. Seneca National Bank*, 213 Kan. 61, 67-68, 515 P.2d 781 (1973), fits the circumstances of this case.

The City has failed to show that Ritchie Paving is not the low responsible bidder; thus, the City has no reasonable justification for rejecting Ritchie Paving's bid. By allowing recovery for bid preparation costs, the concern expressed by this court in *Sutter Bros.* for the protection of the public would be served in that it discourages misconduct in the bidding process and insures that the low responsible bid is accepted. In so doing, the integrity of the competitive bidding process is upheld and the taxpayer receives the intended benefit of the lowest responsible competitive bid. Under these circumstances, we recognize promissory estoppel as a proper remedy for an unsuccessful responsible low bidder to recover bid preparation costs. Such recovery is limited to costs incurred as a direct result of preparing and submitting a bid pursuant to Deerfield's bidding documents.

Finally, Deerfield argues that Ritchie Paving's action against it is barred by the discretionary function exception to the Kansas Tort

Claims Act. Ritchie Paving's cause of action is based on its reasonable detrimental reliance on Deerfield's promise rather than on tort principles.

Reversed and remanded for further proceedings consistent with this opinion.

DAVIS and NUSS, JJ., not participating.
GARY W. RULON, C.J., and CAROL A. BEIER, J., assigned∎