NOT DESIGNATED FOR PUBLICATION

No. 128,368

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

SCOTT FAMILY PARTNERSHIP, LLC,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee.*

MEMORANDUM OPINION

Appeal from Shawnee District Court; THOMAS G. LUEDKE, judge. Oral argument held September 16, 2025. Opinion filed April 24, 2026. Affirmed in part, reversed in part, and remanded with directions.

*Vincent M. Cox*, of Cavanaugh, Biggs & Lemon, P.A., of Topeka, for appellant.

*Adam D. King*, of Kansas Department of Revenue, for appellee.

Before ARNOLD-BURGER, P.J., HURST, J., and JACOB E. PETERSON, District Judge, assigned.

HURST, J.: Scott Family Partnership LLC (Scott Family LLC) leased the Scott Building to the Kansas Department of Revenue (KDOR) for a 25-year term (the Lease). Under the Lease, KDOR agreed to reimburse Scott Family LLC a portion of its operating costs, including "actual Real Estate Taxes," that exceeded a 2016 base amount with an escalating cap. To update the building and facilitate KDOR's occupancy, Scott Family LLC invested $6 million in property improvements, qualifying for rebates under the City of Topeka's Neighborhood Revitalization Program (NRP). A dispute arose over whether

1

those rebates should offset the reimbursable Real Estate Taxes under the Lease, reducing KDOR's obligations.

Scott Family LLC also negotiated a Third Amendment to the Lease to facilitate its refinancing and reduce its expenses. While KDOR initially agreed to the Third Amendment, as an apparent negotiation tactic it ultimately refused to sign amid the rebate tax dispute. Unsurprisingly, litigation ensued in which Scott Family LLC sought a declaratory judgment on the meaning of the Lease's terms, breach of contract for underpayment, and promissory estoppel for KDOR's failure to execute the Third Amendment. Ultimately, the district court interpreted "actual Real Estate Taxes" as the net of taxes paid excluding rebates and incentives from the City of Topeka, awarded KDOR $59,625 in alleged overpayments, dismissed Scott Family LLC's breach of contract claim, and denied Scott Family LLC's promissory estoppel claim as untimely while also concluding it failed on the merits.

On appeal, each of the district court's decisions is under attack. This court's review demonstrates an error in the district court's ruling on the meaning of "actual" as to the Real Estate Taxes because the Lease's plain language requires reimbursement based on the taxes paid without regard for incentives or rebates under the NRP. As a result, the district court's decision that KDOR overpaid $59,625 is reversed and remanded. Finally, because Scott Family LLC failed to show it suffered harm based on any alleged reliance on a promise from KDOR, its promissory estoppel claim fails. Accordingly, this matter is affirmed in part, reversed in part, and remanded with directions.

FACTUAL AND PROCEDURAL BACKGROUND

In February 2015, Scott Family LLC entered into a 25-year lease agreement with KDOR for the Scott Building, a 53,000 square foot property in Topeka. The dispute in this case concerns Special Provision #8 of the Lease, which establishes a detailed cost-

2

sharing mechanism regarding the operating costs for the Scott Building. Under this provision, KDOR must reimburse Scott Family LLC for a portion of operating costs—specifically defined to include "actual Real Estate Taxes," utilities, and insurance—that exceed a base amount of $183,196.35 annually. These reimbursements are subject to annual caps: $0.25 per square foot for years 1-7, escalating to $0.40 for years 8-17, and ultimately reaching $0.60 for years 18-25. The provision includes detailed requirements for documentation and audit rights. A subsequent First Amendment in July 2015 standardized terminology, replacing "Operating Expenses" with "Operating Costs," without changing the parties' substantive obligations. Absent from this comprehensive framework is any mention of offsets, credits, or rebates.

To transform the Scott Building into suitable governmental office space, Scott Family LLC secured $6 million in financing at a fixed interest rate that would convert to a variable rate after ten years. Scott Family LLC's improvements to the Scott Building qualified the property for participation in Topeka's NRP under K.S.A. 12-17,118(d). This statutory program is designed to encourage urban redevelopment.

Under the Lease, Scott Family LLC paid the annual real estate taxes for the Scott Building to Shawnee County. Subsequently, Topeka issued NRP rebates to Scott Family LLC representing the tax increment attributable to the $6 million in property improvements completed by Scott Family LLC. The tax rebates proved substantial: $120,229.63 in 2017; $119,966.81 in 2018; $119,836.88 in 2019; and $119,128.92 in 2020.

When the Scott Building's operating costs first exceeded the base amount, beginning in 2017, Scott Family LLC submitted invoices for reimbursement under Special Provision #8. KDOR initially honored the Lease obligations as written, paying Scott Family LLC $13,250 for 2017 and $26,500 for 2018. In subsequent years, KDOR only partially paid the amount requested by Scott Family LLC: $13,250 of the $39,750

3

invoiced for 2019 and $6,625 of $53,000 invoiced for 2020. By 2021 and 2022, KDOR ceased payments entirely, despite invoices totaling $145,750. During this period, Scott Family LLC bore operating costs of $1,830,182.80—comprising $1,004,123.60 in real estate taxes, $41,984.92 in insurance, and $784,074.32 in utilities—while receiving only $59,625 from KDOR. After Scott Family LLC demanded full payment on September 3, 2020, KDOR issued identical letters on October 9 and 15, 2020, offering settlements but refusing to pay the full invoiced amounts.

*The Third Amendment to Reduce Scott Family LLC's Interest Rate*

Parallel to the escalating reimbursement dispute, Scott Family LLC pursued opportunities to stabilize its debt service costs. Market conditions in 2018-2019 presented an attractive opportunity to replace the original variable-rate loan. Scott Family LLC secured a 4% fixed-rate commitment from a bank—a percentage point below Scott Family LLC's existing rate—contingent upon certain Lease modifications to satisfy the lender's requirements.

These refinancing needs precipitated negotiations for a Third Amendment to the Lease. The proposed Third Amendment did not alter Special Provision #8 or any other substantive Lease terms, but merely included technical modifications required for lender approval. On May 17, 2019, following extensive review, KDOR's authorized representative communicated that its legal and fiscal teams had approved the amendment's form, and once Scott Family LLC executed and returned the document, KDOR would "continue [their] signature process . . . [and] send back a copy of the fully signed Amendment once all signatures [were] complete"—language Scott Family LLC interpreted as a commitment.

Ten months later, on March 25, 2020, Scott Family LLC executed the Third Amendment and formally requested KDOR's signature on April 16, 2020. KDOR refused

4

to sign the Third Amendment on August 4, 2020, stating it would not proceed "while there are outstanding issues . . . [but] remain[s] open for discussion and look[s] forward to resolving the current dispute." This implied KDOR's approval was conditioned on resolution of the tax rebate matter.

This escalating discord led to litigation with Scott Family LLC filing a Chapter 60 petition in Shawnee County District Court for declaratory judgment. Scott Family LLC sought the following: clarity on the meaning of Special Provision #8 regarding the cap on operating costs and the base year for valuation (count 1); breach of contract for unpaid costs based on the interpretation of Special Provision #8 (count 2); and promissory estoppel for KDOR's refusal to sign the Third Amendment (count 3). KDOR moved to dismiss the petition by arguing the Kansas Judicial Review Act, 77-601 et seq., was the only method by which Scott Family LLC could seek relief. KDOR later filed an amended answer and asserted claims for declaratory judgment on which valuation year should be used in calculating the base year described in Special Provision #8 (counterclaim 1); declaratory judgment on the meaning of "actual Real Estate Taxes" as found in Special Provision #8 (counterclaim 2); and seeking a judgment for $59,625 for overpayment to Scott Family LLC (counterclaim 3). Both parties moved for summary judgment.

The district court ruled in favor of Scott Family LLC on count 1—interpreting the base year valuation found in Special Provision #8—which is not part of the present appeal. Relevant to this appeal, the district court granted summary judgment to KDOR on the rebate-offset issue (counterclaims 2 and 3), finding:

> "If the parties intended for all assessed taxes to be included in operating expenses, they would have either used the word 'assessed' or left out any modifier, leaving the provision to state, 'The Real Estate Taxes . . . shall be included in operating expenses.' This is not what Special Provision #8 provides. Thus, this Court concludes only taxes actually paid by SFP can be included in operating expenses under Special Provision #8."

5

The district court denied summary judgment on the remaining claims.

The matter proceeded to a bench trial, after which the district court ruled on the interpretation of the expense cap language of Special Provision #8, not relevant to this appeal, and found Scott Family LLC's promissory estoppel claim untimely but concluded the claim also failed on its merits. The court also reiterated that it was not changing its ruling regarding the rebate issue: "The Court has previously ruled and still finds that 'only taxes actually paid by [Scott Family LLC] can be included in operating [costs] under Special Provision #8.'"

Thus, the district court ruled in Scott Family LLC's favor as to their declaratory judgment claim (count 1); in KDOR's favor on its counterclaims regarding the meaning of "actual Real Estate Taxes" and related overpayments (counterclaims 2 and 3); in KDOR's favor on Scott Family LLC's promissory estoppel claim (count 3); and dismissed Scott Family LLC's breach of contract claim (count 2).

Scott Family LLC appeals. Additional facts will be added as necessary.

DISCUSSION

Scott Family LLC raises four issues on appeal: (1) the district court erred in interpreting the terms of Special Provision #8; (2) the district court erred in determining amounts owed based on its erroneous decision regarding the first issue; (3) the district court erred by concluding Scott Family LLC's promissory estoppel claim was untimely; and (4) the district court erred by denying Scott Family LLC's promissory estoppel claim. Resolution of the first issue also resolves the second issue, so they will be addressed together.

6

*Unique Procedural Posture of this Appeal*

Generally, judicial review of KDOR's actions is governed by the Kansas Judicial Review Act. K.S.A. 77-603; K.S.A. 77-606. In those circumstances, this court exercises judicial review of an agency's action as if the appeal was made directly to this court. *Bd. of Cherokee County Comm'rs v. Kansas Racing & Gaming Comm'n*, 306 Kan. 298, 318, 393 P.3d 601 (2017). Typically, "[j]udicial review of disputed issues of fact shall be confined to the agency record." K.S.A. 77-618.

However, this case presented somewhat differently in that there was no standard agency record upon which the district court could rely, so the district court conducted a bench trial to perform additional fact-finding. Under the circumstances, the district court had discretion to take additional evidence, and neither party alleges the court abused that discretion. See *Southwest Kan. Royalty Owners Ass'n v. Kansas Corporation Comm'n*, 244 Kan. 157, 168, 769 P.2d 1 (1989) (taking additional evidence is discretionary); *Romkes v. University of Kansas*, 49 Kan. App. 2d 871, 894, 317 P.3d 124 (2014) ("The decision to admit additional evidence not found in the agency record is within the discretion of the court."). Neither party raised any procedural challenges to the district court during the proceedings or on appeal.

## I. THE DISTRICT COURT ERRED IN INTERPRETING SPECIAL PROVISION #8

Scott Family LLC argues the district court erred in concluding the language "actual Real Estate Taxes" in the Lease's Special Provision #8 referred to the net taxes incurred by Scott Family LLC after accounting for third-party rebates or incentive payments. The district court's decision meant that the "actual Real Estate Taxes" would be calculated by subtracting the "rebates" Scott Family LLC obtained through the NRP from the Real Estate Taxes paid to the County. Under this interpretation, it appears that any type of rebates or incentives received that were calculated based on Scott Family

7

LLC's tax obligation could be subtracted to reduce the amount of "actual Real Estate Taxes" KDOR owed under the Lease.

The parties' dispute turns on fundamental principles of contract interpretation. See *Harding v. Capitol Federal Savings Bank*, 65 Kan. App. 2d 30, 31, 556 P.3d 910 (2024) (referring to "Kansas' longstanding precedent on . . . interpreting language within a contract"), *aff'd* 321 Kan. 292, 577 P.3d 553 (2025). When the legally relevant facts are undisputed, the existence and terms of a contract are questions of law subject to de novo review. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 310 Kan. 644, 650, 448 P.3d 383 (2019). The primary consideration when interpreting a contract is the parties' intent, which is determined from the plain language within the document's four corners, giving ordinary words their common meanings in context. When terms are unambiguous, courts enforce the contract as written, not as one party wishes they had been written. See *Russell v. Treanor Investments*, 311 Kan. 675, 680-82, 466 P.3d 481 (2020) (courts may not reform an instrument by inserting language into agreements).

*An Overview of the Neighborhood Revitalization Program*

The parties' dispute cannot be properly addressed without examining the Kansas Neighborhood Revitalization Act, codified at K.S.A. 12-17,114 et seq. This Act empowers municipalities to stimulate redevelopment in designated revitalization areas and dilapidated structures through targeted incentives. The NRP is funded through a dedicated revitalization fund comprised of funds that "may be budgeted and transferred to such fund from any source which may be lawfully utilized for such purposes" and "[a]ny municipality may expend money from the general fund of such municipality to accomplish the purposes of [the NRP]." K.S.A. 12-17,118(a). Under the program, property owners pay full ad valorem taxes to the taxing county, preserving governmental cash flow, and then may receive a payment representing the increased tax increment the

property owner would owe attributable to the specified improvements. K.S.A. 12-17,118(a), (d).

The statutory mechanism operates through four distinct steps: First, Scott Family LLC pays full property taxes on Scott Building to the Shawnee County Treasurer averaging almost $150,000 annually for the years owed, based on the $1,004,123.60 paid over the Lease period as of fiscal year 2023. This payment goes to the Shawnee County Treasurer under K.S.A. 79-2004. Second, Shawnee County distributes collected taxes to various local entities according to their respective mill levies. K.S.A. 12-1678a. Third, municipalities may contribute increments to a Neighborhood Revitalization Fund through interlocal agreements. K.S.A. 12-17,119; K.S.A. 12-17,118(a),(d). Fourth, the City of Topeka administers the NRP and distributes payments to qualifying property owners. K.S.A. 12-17,118(d). The money returned is referred to as a "rebate" which is undefined by the statute and appears to be a convenient shorthand. K.S.A. 12-17,118(d). The "rebate" paid through the NRP is not a reduction in Scott Family LLC's property tax obligation or payment—all taxing entities receive their full levy amounts. K.S.A. 12-1678a.

Importantly, this case does not relate to KDOR's authority or actions as a taxing authority. See K.S.A. 75-5102 (division of taxation); K.S.A. 75-5105 (division of property valuation); K.S.A. 79-3233 (income tax); K.S.A. 79-3604 (sales tax). Here KDOR's role is merely that of a tenant of the Scott Building.

*Special Provision #8 of the Lease*

Under Special Provision #8, KDOR reimburses Scott Family LLC for operating costs exceeding the 2016 base year amount of $183,196.35, subject to annual caps. Thus, KDOR does not reimburse Scott Family LLC for all its operating costs—but merely a portion thereof up to an annual maximum. For example, in 2017 and 2018, Scott Family

9

LLC recorded the operating costs as $273,071.88 and $263,837.91, respectively, and invoiced KDOR $13,250 for 2017 and $26,500 for 2018. Those reimbursements are also less than Scott Family LLC paid in real estate taxes in those years.

The "Operating Costs" in Special Provision #8 are defined to include "Real Estate taxes, utilities, and insurance" and provides that "actual Real Estate Taxes . . . shall be included in Operating Costs." The Lease defines " Real Estate Taxes" as "all ad valorem taxes (adjusted after protest or litigation, if any)," and explains the related obligations:

> "The actual Real Estate Taxes and Lessor's insurance premiums . . . shall be included in Operating Costs . . . . The Lessor will provide the Lessee a detailed summary with tax receipts . . . of the Lessor's actual Real Estate Taxes and insurance premiums expended each calendar year, or portion thereof, during the term of this Lease, promptly following receipt of the Real Estate Taxes statement for such calendar year.
>
> . . . .
>
> "'Real Estate Taxes' shall mean:  (i) all ad valorem taxes (adjusted after protest or litigation, if any) for any part of the term of this Lease; (ii) any taxes which shall be levied or required to be paid in lieu of any such ad valorem taxes; and (iii) occupational taxes or excise taxes levied on rentals derived from the operation of the Leased Property or the privilege of leasing property."

Special Provision #8 requires KDOR to reimburse "actual Real Estate Taxes" as part of operating costs exceeding the base amount but does not define the term "actual." The Lease also does not reference rebates, credits, offsets, or payment adjustments, but notably does account for adjustments from protests or litigation. This Lease provision's comprehensiveness underscores what it omits. It details calculation methods, establishes escalating caps, specifies documentation requirements, and provides audit rights—yet remains utterly silent on rebates, credits, offsets, or other development incentives. This silence speaks volumes in an agreement negotiated between sophisticated parties represented by counsel. *National Bank of Andover v. Kansas Bankers Surety Co.*, 290 Kan. 247, 261, 225 P.3d 707 (2010) (sophisticated parties' contract enforced as written);

10

*Ancon Ins. Co. (U.K.) v. GE Reinsurance Corp.*, 480 F. Supp. 2d 1278, 1285 (D. Kan. 2007) (highlighting that both parties had "unfettered access to first-rate legal counsel" in analysis of contract terms).

While the Lease does not define the term "actual," it can be clearly understood in the context of the language of Special Provision #8 and is not ambiguous. See *Speth v. State Farm Fire & Casualty Co.*, 272 Kan. 751, 753, 35 P.3d 860 (2001) (disagreeing that the undefined term "vacant" meant the contract was ambiguous); *Security State Bank of Kansas City v. Aetna Cas. & Sur. Co.*, 825 F. Supp. 944, 947 (D. Kan. 1993) (same re: "tangible property"). Neither party asserts that Special Provision #8's use of "actual Real Estate Taxes" is ambiguous. A common word with known meaning that is not defined in a contract does not create ambiguity—what makes a writing ambiguous is if a court is "'genuinely uncertain which one of two or more meanings is the proper meaning.'" *Greer v. Eby*, 309 Kan. 182, 192-93, 432 P.3d 1001 (2019). Ambiguity exists only when terms reasonably support multiple interpretations after considering the entire instrument; mere disagreement between parties creates no ambiguity. *Trear v. Chamberlain*, 308 Kan. 932, Syl. ¶¶ 2-3, 425 P.3d 297 (2018). This court will not strain to find an ambiguity where, in common sense, there is none. *Greer*, 309 Kan. at 192-93.

The district court, without identifying any ambiguity, adopted KDOR's interpretation of "actual." Under that interpretation, "actual" means that Scott Family LLC's "rebate" from the City of Topeka through the NRP is excluded from KDOR's operating cost reimbursement obligations. The district court reasoned that including the word "actual," when the district court believed it was unnecessary, demonstrated an intent that the word meant some calculated net taxes paid. In so finding, the court analogized this case to *Greeley Gas Co. v. State Corporation Commission*, 15 Kan. App. 2d 285, 807 P.2d 167 (1991). *Greeley* addressed consumer protection in utility ratemaking—ensuring ratepayers paid only "actual" rather than estimated costs. 15 Kan. App. 2d at 287-88. Transplanting this regulatory principle into an arm's-length commercial lease between

11

equals inserts non-bargained for requirements into a commercial contract. *Trear*, 308 Kan. 932, Syl. ¶ 3 (no implied terms); *Peterson v. Ferrell*, 302 Kan. 99, 104, 349 P.3d 1269 (2015) (enforce contract as written).

Moreover, Scott Family LLC paid the full amount of taxes owed to the taxing authority, Shawnee County. This means Scott Family LLC's receipt of an incentive payment "rebate" from a third party that is calculated based on Scott Family LLC's increased tax obligation from its development efforts did not reduce its actual tax payment. Therefore, Scott Family LLC actually paid the full taxed amount.

The Lease explains that the operating costs include "actual Real Estate Taxes" which are "expended each calendar year . . . promptly following receipt of the Real Estate Taxes statement for such calendar year." Further, the lease defines "Real Estate Taxes" as "all ad valorem taxes (adjusted after protest or litigation, if any)." Thus, even if at first glance "actual" could be regarded as having two potential meanings—that is, the taxes paid by Scott Family LLC *or* the net taxes paid after subtracting Scott Family LLC's receipt of credits or rebates from third parties—the Lease identifies the two scenarios in which Scott Family LLC's tax obligation would be different than that assessed and paid: the amount paid "after protest or litigation."

In this context, the word "actual" naturally refers to the amount Scott Family LLC paid to the taxing authority, not a hypothetical net figure after unrelated "rebates" from third parties. This interpretation aligns with ordinary use of the common word "actual" and avoids importing unstated words or requirements. See *Zaragoza v. Board of Johnson County Comm'rs*, 320 Kan. 691, 699, 571 P.3d 545 (2025) (giving contract terms their ordinary meaning). Contrary to KDOR's assertion, the word "actual" would not be meaningless if this court does not find it to mean some net amount after unidentified payments. Rather, the natural use of "actual" under these circumstances demonstrates the parties' intent to not rely on estimated or even assessed taxes for the operating costs

12

calculation—but as stated in the Lease—to rely on the amount paid, or "expended each calendar year . . . promptly following receipt of the Real Estate Taxes statement for such calendar year." The Lease accounts for adjustments after protest and litigation—but is silent on third-party rebates or incentives, and distinguishes between amounts expended and assessed. This court need not insert extra language into the Lease to discern the meaning of "actual."

KDOR concedes the Lease contains no provision for rebate or incentive payments through the NRP. Additionally, KDOR provides no controlling Kansas authority mandating its net-cost interpretation—instead, KDOR's position relies on a dictionary definition of the word "rebate"—a word not included in the Lease. KDOR's arguments are unpersuasive based on the common meaning of the words in Special Provision #8 when the provision is read as a whole. See *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 963, 298 P.3d 250 (2013) (contract terms and passages cannot be interpreted in isolation but must be considered as a whole).

In its motion for summary judgment KDOR raised the concern that Scott Family LLC's interpretation of "actual Real Estate Taxes" would result in a windfall. While that equity argument has its place, it is inapplicable here. The NRP system pays property owners a portion equal to or less than the owner's *increased* tax obligation after investment (here Scott Family LLC invested $6 million) in designated neighborhoods or buildings where the City of Topeka wants to incentivize investment. K.S.A. 12-17,118(d). There is no windfall. Moreover, even if Scott Family LLC realized a windfall of payments from a third party, that is unrelated to KDOR as a tenant of the Scott Building. Nothing in the Lease—the document governing the parties' lessor-lessee relationship—prohibits such an outcome. "A party who signs a written contract is bound by its provisions regardless of the failure to read or understand the terms, unless the contract was entered through fraud, undue influence, or mutual mistake." *Albers v Nelson*, 248 Kan. 575, Syl. ¶ 4, 809 P.2d 1194 (1991).

13

To achieve KDOR's desired outcome, this court would have to either add words to the Lease or strain the meaning of the included terms. First, the Lease identifies a list of adjustments to the Real Estate taxes (protests and litigation) that the parties intended to use to reduce KDOR's financial obligation, and this court cannot add the word "rebate" or something similar to achieve KDOR's desired outcome. See *Russell*, 311 Kan. at 680-81 ("A court may not reform an instrument by rejecting words of clear and definite meaning and substituting others."). Second, KDOR contends, without support, that the word "actual" before Real Estate Taxes must mean something more than simply the taxes Scott Family LLC paid to the taxing authority, as opposed to the assessed or estimated taxes. However, the inclusion of the word "actual" before Real Estate Taxes does not import additional concepts related to third-party rebates, incentives or credits into the meaning. "Actual" merely carries its natural, ordinary meaning as the amount of Real Estate Taxes Scott Family LLC paid to the taxing authority. It is undisputed Scott Family LLC pays the full assessed taxes to Shawnee County each year before receiving separate rebate payments from the City of Topeka as incentive for Scott Family LLC's $6 million development investment. These sophisticated parties addressed which tax-related adjustments would impact KDOR's operating cost payments and both knew about the NRP at the time of leasing and could have included language accounting for it if intended.

The district court erred by inserting offset requirements into an unambiguous lease provision and undermining the parties' intent.

*Calculation of Payments Owed*

The district court's erroneous decision to exclude the City of Topeka's NRP payments from the calculation of Operating Costs led it to conclude that the Operating Costs fell below the base amount for 2017-2020. Based on that finding, the district court concluded that KDOR had overpaid Scott Family LLC $59,625. Because this court

14

concludes the Lease did not require an offset for the NRP payments, the district court's overpayment calculation is an error.

Scott Family LLC's uncontroverted evidence on appeal demonstrates that the proper calculation likely resulted in KDOR's underpayment of $218,625. KDOR failed to meaningfully brief this calculation or address the cumulative cap issue, and thus abandons any contrary position in this appeal. See *In re Adoption of Baby Girl G.*, 311 Kan. 798, 803, 466 P.3d 1207 (2020) (issue not briefed is deemed waived or abandoned). Accordingly, the district court's award to KDOR is reversed and remanded. On remand the district court shall determine the amount of underpayment to Scott Family LLC consistent with this opinion.

## II. THE DISTRICT COURT DID NOT ERR IN DENYING SCOTT FAMILY LLC'S ESTOPPEL CLAIM

Scott Family LLC asserted a claim of equitable estoppel, arguing KDOR's failure to execute the Third Amendment, which would have allowed Scott Family LLC to secure a lower financing interest rate, caused substantial damages. The district court denied the promissory estoppel claim as untimely and also found that it failed on the merits.

Scott Family LLC argues the district court erred because it suffered $705,665.30 in quantifiable losses from foregone savings and commissions based on KDOR's refusal to sign the Third Amendment. The facts are not in dispute, which presents this court with a question of law. See *City of Wichita v. Peterjohn*, 62 Kan. App. 2d 750, 761, 522 P.3d 385 (2022). Appellate courts exercise unlimited review of questions of law. *Marcus v. Swanson*, 317 Kan. 752, 764, 539 P.3d 605 (2023).

"[P]romissory estoppel is 'an equitable doctrine designed to promote some measure of basic fairness when one party makes a representation or promise in a manner

15

reasonably inducing another party to undertake some obligation or to incur some detriment as a result.'" *Peters v. Deseret Cattle Feeders*, 309 Kan. 462, 473-74, 437 P.3d 976 (2019). Promissory estoppel does not provide relief based on vague ideas of fairness but requires the party seeking redress to demonstrate that: (1) the promisor reasonably expected reliance, (2) the promisee reasonably relied on that promise to its detriment, and (3) nonenforcement would cause substantial harm. *Bittel v. Farm Credit Svcs. of Central Kansas*, 265 Kan. 651, 661, 962 P.2d 491 (1998); *Terra Venture, Inc. v. JDN Real Estate-Overland Park, L.P.*, 340 F. Supp. 2d 1189, 1202 (D. Kan. 2004), *aff'd* 443 F.3d 1240 (10th Cir. 2006).

Assuming Scott Family LLC can show KDOR made a clear promise to perform from the KDOR representative's May 17, 2019 email that stated KDOR would "continue [their] signature process . . . [and] send back a copy of the fully signed Amendment once all signatures [were] complete," it must then show detrimental reliance on that promise. *Terra Venture, Inc.*, 340 F. Supp. 2d at 1202. Whether a party reasonably relied on a promise to its detriment involves questions of fact and law—where the court must determine whether the facts establish reliance and detriment. *Bittel*, 265 Kan. at 661.

Here, Scott Family LLC took no action after May 17, 2019, in reliance on KDOR's promise that resulted in harm. While Scott Family LLC did not reap the benefits of refinancing its loan, that foregone benefit is distinguishable from suffering damages in reliance on another's promise. *Terra Venture, Inc.*, 340 F. Supp 2d at 1202. Although there appears to be no Kansas Supreme Court case directly addressing the issue, a successful claim of promissory estoppel in Kansas requires the plaintiff to demonstrate reliance damages. 340 F. Supp 2d at 1202; see also *Chrisman v. Philips Industries, Inc.*, 242 Kan. 772, 780, 751 P.2d 140 (1988) (finding no detrimental reliance damages when the plaintiff moved from one job position to another); *Sadiq v. Spirit AeroSystems, Inc.*, No. 07-1276-EFM, 2010 WL 11628797, at *9 (D. Kan. 2010) (unpublished opinion) (damages must be tied to reliance); Restatement (Second) of Contracts § 90 (1981).

16

Reliance damages are often described as out-of-pocket costs or expenses designed to put the promisee in the position it would have occupied had the promise not been made. 2010 WL 11628797, at *9; Restatement (Second) of Contracts § 344 (1981) (discussing this concept in terms of contract law). The permissible damages in a promissory estoppel claim are not necessarily equivalent to all remedies available for breach of contract, and do not typically include expectancy damages such as lost profits or loss of a benefit-of-the-bargain. See *Ritchie Paving, Inc. v. City of Deerfield*, 275 Kan. 631, 640-41, 67 P.3d 843 (2003) (allowing lowest bidder to recover bidding expenses when it did not receive contract despite being lowest bidder but not awarding anticipated profits); *Terra Venture, Inc.*, 340 F. Supp 2d at 1202 (citing *Kirkpatrick v. Seneca National Bank*, 213 Kan. 61, 68, 515 P.2d 781 [1973] for the proposition that the "Restatement 2d of Contracts § 90 . . . 'has long been recognized and relied upon by [the Kansas Supreme Court]'"); Restatement (Second) of Contracts § 90, comment d (1981) (noting that a party is not entitled to lost profits or to expectation interest in the proposed franchise). But see *The Superlative Group., Inc. v. WIHO, L.L.C.*, No. 12-1468-JWL, 2014 WL 1385533, at *3 (D. Kan. 2014) (unpublished opinion) (disagreeing with the assertion that "Kansas law never allows for a recovery of expectancy damages on a claim for promissory estoppel").

Scott Family LLC asserts no damages associated with the time and expense of its efforts after KDOR's presumptive promise to execute the Third Amendment. Rather, it asserted damages more accurately described as expectancy damages—the loss of an expected benefit of a lower interest rate and associated savings. See *Terra Venture, Inc.*, 340 F. Supp 2d at 1202 (expectancy damages as expected profits lost). The loss of an anticipated benefit is distinguishable from damages suffered from the reliance on another's promise and is not permitted as damages in a promissory estoppel claim. At the end of the day, Scott Family LLC was left in the same position after KDOR's presumptive promise on May 17, 2019, as it occupied before it attempted to execute the Third Amendment. Thus, Scott Family LLC's promissory estoppel claim fails, and, as a

17

result, it does not matter whether it was timely. The district court's denial of the claim is affirmed.

CONCLUSION

KDOR is a tenant in a building owned by Scott Family LLC. It is undisputed that Special Provision #8 of the parties' Lease requires KDOR to reimburse Scott Family LLC for a portion of operating costs that exceed the 2016 base valuation amount. It is also undisputed that those costs include the *actual* Real Estate Taxes (less adjustments for protests and litigation) expended by Scott Family LLC to the taxing authority. KDOR contends that the word "actual" means the parties must engage in a separate calculation for reimbursable operating costs of the amount paid to the taxing authority less certain rebates, offsets, or credits from third parties. The Lease includes no such language—and the omission does not create ambiguity, nor is the word "actual" as used in the Lease meaningless. The phrase "actual Real Estate Taxes" merely refers to the amount paid by Scott Family (less adjustments for protests and litigation) to the taxing authority, rather than the assessed or estimated amount.

The district court erred in its interpretation of Special Provision #8 and in its related calculation of KDOR's required payments. However, Scott Family LLC suffered no damages in reliance on KDOR's promise to execute the Third Amendment and thus Scott Family LLC's promissory estoppel claim fails. On remand, the district court shall recalculate the operating costs owed by KDOR consistent with this opinion and order such appropriate payment.

Affirmed in part, reversed in part, and remanded with directions.

18